BATTLES v. BATTLES.

No. 34606.    Jan. 8, 1952.

*239 P. 2d 794.*

Claud Briggs, Oklahoma City, for plaintiff in error.

John H. Kennedy, Oklahoma City, for defendant in error.

PER CURIAM.    Plaintiff in error was the defendant in the trial court and the defendant in error was the plaintiff below. In this opinion the parties will be referred to as they appeared in the trial court.

The parties were married June 8, 1921, and three children were born of the marriage. They had lived separately and apart for some time prior to the 20th day of July, 1946, on which date an agreement in writing was entered into between them. This agreement and its proper construction is the subject of this litigation.    It need not be set out in full, but the material substance thereof may be stated:

After reciting the history of the marriage and the fact of their separation, it' recites:

"Whereas, the parties, prior to their separation, had accumulated certain property consisting of a farm ranch, located in Pittsburg County, Oklahoma, with livestock and equipment thereon located and of the value of approximately fifteen thousand dollars ($15,-000.00), and in addition thereto Second party has and owns certain business mercantile property aggregating a value of approximately thirty thousand dollars ($30,000.00), all of which is owned in the name of the Second Party and Second party has up to this time, maintained and provided for the First party, but being desirous of settling their affairs and making definite provision for future rights and liabilities for the separate maintenance of Party of the First Part it is hereby mutually agreed as follows, to-wit:

"I.

"That the parties hereto shall continue to live separately and maintain separate places of residence and Second party in this connection agrees to either buy or build a house to be used by the First Party as her home, the cost of which shall not exceed ten thousand dollars ($10,000.00)."

It then provided that such home might be built on a lot previously acquired or might be built elsewhere, or a house already constructed might be acquired, the choice being that of the plaintiff, but the property was not to cost in excess of $10,000. Provision was made by the contract for other payments:

"It is agreed that the second party shall pay the first party for her separate, individual support and maintenance and upkeep of her home the sum of One Hundred ($100.00) Dollars per month, and in event of a divorce being granted to either party hereto, second party, in consideration of the mutual covenants herein, agrees to pay the first party so long as she shall live and remain unmarried the sum of One Hundred Dollars ($100.00) per month."

In event either party should secure a divorce, it was provided:

"In consideration of the covenants and agreements above undertaken, and to be performed by the second party, the first party does hereby relinquish all other claim upon and against the second party. . . .

"It is further mutually understood and agreed by the parties hereto, that since they do intend to hereafter live separate and apart, either party shall be free to file or commence an action for divorce, and in event a divorce be granted to either and the marriage relation heretofore existing be thereby terminated, the obligations herein undertaken and agreed to by the parties shall remain binding, notwithstanding such divorcement, and second party hereto, even though a divorce be granted to either of them by a Court of competent jurisdiction, shall be and remain obligated to first party for the payment of the sums of money hereinbefore designated, for and during the period of time herein provided for, said decree, however, to provide that all property, either real, personal or mixed, now owned and held in the name of the second party shall be set apart to him as his separate property. . . ."

Immediately after the execution of this contract, the plaintiff, Ruth Battles, filed suit for divorce and a divorce was granted, the decree making reference to the contract in the following language:

"The Court further finds that plaintiff and defendant have heretofore settled all questions of property rights and alimony covering the period of said marriage by written contract entered into with good faith by and between plaintiff and defendant and that no relief as to property rights or alimony is requested herein."

The defendant's business affairs became very involved and he was adjudicated a bankrupt April 16, 1949, and he received his discharge in bankruptcy October 18, 1949. At the time of the bankruptcy the defendant had not provided plaintiff with the home, and he was in arrears in the amount of $800 on the monthly payments pro-

vided for by the contract at the time of the trial.

Defendant filed this suit to recover the sum of $10,000 and for the sum of $800, being the amount of the provision for the cost of the home, and the monthly payments in arrears. The defendant pleaded his discharge in bankruptcy, and the only question presented in this case is whether the obligations of this contract were such as may be discharged by bankruptcy.

Defendant contends that this contract is one for a settlement of the property rights of the parties, and as such discharged by the bankruptcy proceedings, but considering the instrument as a whole, and in view of the circumstances of its execution, we can reach no other conclusion than that it was a contract for the support and maintenance of the plaintiff. While it recites in a general way the property owned by the parties there appears no relationship between the amount thereof and the provisions of the contract; the plaintiff was a woman of no business experience; the contract recites "and being desirous of settling their affairs and making definite provision for future rights and liabilities for the separate maintenance of party of the first part (plaintiff)"; the house to be purchased was to be used by plaintiff "as her home", and the monthly payments were recited to be "for her separate, individual support and maintenance and upkeep of her home".

A contract for the separate maintenance of the wife may be entered into, and its provisions may extend and continue even after the parties have been divorced.

In Murphy v. McElroy, 185 Okla. 388, 92 P. 2d 369, the syllabus of the opinion is as follows:

"1. The rule that alimony to the wife at certain intervals without fixing a definite sum ultimately to be paid under a decree is void as to such alimony does not apply to contracts entered into between the husband and

wife for the payment of alimony at certain intervals for an indefinite period of time, where such contract stands alone and is not merged into the decree or extinguished by it.

"2. An agreement in writing by husband and wife after separation and after divorce proceedings had been commenced, wherein property rights are settled, separate maintenance is provided for the wife, and the husband's estate is released, does not contravene public policy, is authorized by section 1656, O. S. 1931, and will be enforced if fair and fairly entered into."

In the opinion the court reviews the authorities at length, and it would serve no purpose to review the question herein.

The Bankruptcy Act (Title 11, §35(2), U. S. C. A.) provides, in so far as applicable:

"A discharge in Bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) . . .; (2) . . ., or for alimony due or to become due, or for maintenance or support of wife or child, . . . ."

That this contract being one for support and maintenance does not lose its nature by the subsequent divorce of the parties is established by sound authority.

The opinion in the case of In re Adams, 25 F. 2d 640, contains the following pertinent discussion:

"Rather we think that the sum of all the payments, both before and after any divorce, was to be paid and accepted in full for that support and maintenance only which could be exacted by recourse to law. The fact that the parties chose to spread their payments over a period which might, if the suit proved successful, pass beyond the time when any such duty would exist presumptively affected their amount. Even so, those that fell due after the divorce did not lose their character as 'liabilities for maintenance and support.' They were similar to a provision in a separation settlement which might defer certain installments until after the death of the wife."

In considering the question of the effect of a discharge in bankruptcy upon the obligations of the husband for support of the wife, the Supreme Court of California, in the case of Remondino v. Remondino, 41 C. A. 2d 208, 106 P. 2d 437, said:

"If, upon a consideration of the entire transaction the court determines that the purpose of the judgment for support money is to guarantee the economic safety of the wife by the husband, then his discharge in bankruptcy does not affect his liabilty under the judgment. In re Ridder, 2 Cir., 79 F. 2d 524, 103 A. L. R. 719. In the case of Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084, the parties entered into a separation contract. Divorce proceedings followed but the provisions of their settlement were not incorporated into the divorce decree. The United States Supreme Court held that the parties had merely defined the amount and extent of the husband's liability to support his wife and that the fact of their having fixed the liability by contract did not alter its essential character and therefore the payments accrued under the contract were not discharged by bankruptcy. Since from the covenants of the parties, it is obvious that their contract was made with reference to and by reason of plaintiff's obligation to support defendant, it is still a valid and subsisting obligation notwithstanding the discharge in bankruptcy. Alimony due or to became due or for the maintenance or support of wife or child remains the obligation of a bankrupt, notwithstanding his discharge. In re Ridder, supra; Bankruptcy Act, §17(2), 11 U.S.C.A. §35(2)."

The defendant's obligation being substantially for the maintenance and support of a wife, was not discharged by his subsequent bankruptcy, and the judgment of the trial court is affirmed.

This Court acknowledges the services of Attorneys Ezra Dyer, Earl Q. Gray, and Marvin Shilling, who as Special Masters aided in the preparation of this opinion. These attorneys were

recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, and O-NEAL, JJ., concur.