**MID–CONTINENT CASUALTY COMPANY,**
Plaintiff in Error,

v.

**F. A. JENKINS, d/b/a Zion Construction
Company et al., Defendants in Error.**

No. 40704.

Supreme Court of Oklahoma.

Feb. 21, 1967.

Wheeler & Wheeler, Tulsa, for plaintiff in error.

Baker & Baker, Tulsa, for defendants in error.

IRWIN, Vice Chief Justice:

This appeal evolved from an action by Mid-Continent Casualty Company herein called "Surety", seeking a permanent in-

juction restraining the named defendants (Northside State Bank, F. A. Jenkins, d/b/a Zion Construction Company, First National Bank of Broken Arrow and Fellowship Baptist Church, Inc.) from issuing or paying to the Bank of Broken Arrow, hereafter the "Bank", any check against funds of the church deposited in the Northside State Bank, referred to as "Northside". The following statement is sufficiently comprehensive to disclose the basis of the issue presented, thus no statement of the pleadings or chronological recitation of the various hearings and matters presented by different parties, in support of their respective positions, is attempted.

On July 6, 1961, the Church contracted with Jenkins for new construction on the existing church edifice, at a cost of $30,-778.00. Among other provisions the contract required Jenkins to secure a performance and payment bond guaranteeing completion and payment of liabilities incurred during construction. Under the contract the Church was to make payments as different stages were completed, as shown by issuance of the architect's certificate. In order to finance construction Jenkins established financial arrangements with the Bank for advancement of funds necessary to meet payroll and material costs. Shortly after execution of the contract Jenkins began construction, and on July 19 assigned all his rights under the contract to the Bank

To finance construction the Church had secured a loan of $45,000.00 from Northside, part of which was utilized to discharge existing indebtedness. The loan was to be handled as a special fund from which cash transfers into the Church's account were authorized upon receipt of the architect's certificate of approval of the work completed. On September 6, 1961, the Church and Northside executed a supplemental agreement wherein the original loan agreement was ratified, and the Church assigned all rights under the performance bond to Northside. Work continued until September when the Church refused further payment, upon the architect's recommendation, until Jenkins secured the bond required under the contract.

On September 13, 1961, Jenkins applied to the Surety for issuance of a bond. Pursuant to the Surety's requirement for issuance of the bond, the Bank notified the Surety on September 20 that Jenkins had deposited $10,000.00 in a special account, payable to the Surety in event of default in the construction contract. The performance bond was issued effective September 21, 1961.

Construction continued and was substantially complete on November 29 when an architect's certificate of approval was issued, authorizing Northside to transfer $3,000.00 into the Church's account. . The certificate was presented to the Church Treasurer and then delivered to Northside. The Church then issued its check for the amount, drawn on Northside and payable to Jenkins and the Bank, which Jenkins endorsed and delivered to the Bank as payment upon his obligation incurred by advancements made. This check was forwarded immediately for collection. However, this same day Jenkins advised Surety he was seriously in default and liability would attach upon the bond. Surety then learned of the $3,000.00 check paid to the Bank for satisfaction of the Bank's advances made between September 20 and November 29, 1961.

The Surety notified Northside by telephone of default and asserted claim to the balance of construction money on deposit or due upon the loan. Northside then telephoned the architect, who advised withholding payment of the check until further inquiry could be made. Northside had not credited the loan proceeds to the Church's account, and in deference to request by Surety's representative returned the check to the Bank for "Insufficient funds." Absent the Surety's telephone call, the check would have been paid upon presentment under the loan agreement, although funds had not been transferred to the Church's

account. At the time of presentment and dishonor there was approximately $1,400.00 on deposit in the Church's account derived from other sources.

When the check was returned, the Bank again forwarded the item for collection upon Northside's agreement it would be paid. However, before paid, the Surety secured a temporary order restraining any of defendants from drawing upon any Church funds held by Northside. Surety's petition asked that the temporary injunction be made permanent and for determination that, by reason of subrogation rights under the bond, Surety was entitled to all funds held by Northside for the Church's construction account. All parties filed pleadings disclosing their respective positions and the issues were tried to the court. The case was heard at length, arguments presented and briefs furnished. On May 24, 1963, judgment was entered dissolving the temporary injunction entered December 29, 1961, and denying Surety's claim to the $3,000.00 represented by the dishonored check. Motion for new trial was over-ruled and this appeal was perfected.

On appeal Northside states that it has occupied the position of a stakeholder, and stands ready to pay over the money which remains on deposit upon final decision of this Court.

■ Surety contends that the $3,000.00 check drawn payable to Jenkins and Bank was not an assignment of the funds involved. The basis for this argument is that under statutes and decided cases, a check is not an assignment of funds held by the drawee and available for payment, and fixes no liability on the drawee unless and until it accepts the instrument or pays same. First National Bank, etc. v. Whitelock, 181 Okl. 431, 74 P.2d 355; 48 O.S. 1961, § 406. We note that this section of the statute was repealed effective December 31, 1962, after this cause of action was asserted. However, substantially the same provision now appears in the Uniform Commercial Code, 12A O.S.1961, § 3–409.

In our opinion, whether the $3,000.00 check did or did not constitute an assignment of funds then on deposit is not controlling, but the fundamental issue presented is whether, when the check was presented for payment, Northside was obligated to honor same. Stated in another way, what authority did Northside have to refuse payment on the check on the grounds of "insufficient funds" when the same was presented for payment on November 30, 1961?

■ In considering this issue, we find that Northside's loan to the Church was for the specific purpose of the new construction to be completed under the contract. The money was sequestered in a Building Fund Account to be paid only in accordance with the construction loan agreement under which Northside was obligated to honor checks presented under the terms of the contract and for the purposes set forth. The Bank advanced its money upon the strength of a valid assignment which had been made with Church's knowledge and consent, and the record discloses and the trial court found that all monies received by Jenkins from the Bank were used for labor and materials in the construction of the Church and the check was issued in compliance with the architect's certificate. Church did not issue a stop payment order on the check and when the same was presented it wanted and expected the check to be honored. Under the circumstances presented, Northside was obligated to honor such check. See Brown v. Eastman National Bank of Newkirk, Okl., 291 P.2d 828.

Since Northside was obligated to honor the check when the same was presented for payment, the trial court did not err in holding that the Bank was entitled to the $3,-000.00.

Having determined that Bank was entitled to the $3,000.00, and such determination resolves the fundamental issues presented, it is unnecessary to consider or determine Surety's argument concerning its

352

alleged right to equitable relief by subrogation.

 On appeal, the Bank has asked that an attorney's fee of $1,200.00 be taxed against the injunction bond posted by Surety, because Bank has been required to make expenditure of this amount. So far as determinable, this prayer is predicated upon the proposition that the restraining order was wrongfully issued. No authority is cited to support this claim. A proposition unsupported by argument or citation of authority will not be considered on appeal.

Judgment affirmed.

All the Justices concur.