**PORT CITY STATE BANK, Plaintiff-Appellant,**

v.

**AMERICAN NATIONAL BANK, LAWTON, OKLAHOMA, Defendant-Appellee.**

**No. 73–1019.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 10, 1973.

Decided Oct. 23, 1973.

---

Eugene J. Pitman, Houston, Tex., for plaintiff-appellant.

C. William Stratton, Lawton, Okl. (T. D. Nicklas and C. E. Wade, Jr., Lawton, Okl., on the brief), for defendant-appellee.

Before HILL, HOLLOWAY and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal is from a judgment entered against appellant Port City State Bank in its suit to collect upon two checks forwarded to appellee and not returned as insufficient before the appropriate midnight deadline. Following a trial without a jury, the United States District Court for the Western District of Oklahoma ruled that the failure to notify of dishonor prior to the deadline was excused in this case by Regulation J of the Federal Reserve Regulations, 12 C.F.R. 210.14, and 12A O.S.A. 4–108(2).

This court has jurisdiction by virtue of the diversity of citizenship of the parties and the allegation in the complaint of liability greatly exceeding the jurisdictional amount.

The record discloses that appellant was the holder of two checks drawn upon the J. H. McClung Coin Shop account with American National. Both items were forwarded through collecting channels for payment. The first check arrived at American National on Friday, November 28, 1969. That check contained two conflicting amounts: in figures $72,000.00 and in words seventy-two dollars and no/100 dollars. It was processed manually and stamped insufficient funds on Saturday, November 29; however, it was not returned immediately but was placed in Monday's business to determine if any deposits were forthcoming on Monday which would balance the account. Notice of dishonor was given to the last endorser of the check, the Federal Reserve Bank at Oklahoma City, on Wednesday, December 3, and the check was returned to the Federal Reserve on December 4.

The second check, in the amount of $120,377.20, arrived at American National on Tuesday, December 2, 1969. The first notice of its dishonor was by telephone to the Federal Reserve on Friday, December 5; it was returned to the Federal Reserve the same day.

It was stipulated by the parties that the "midnight deadline" for these items

as established by Regulation J, 12 C.F.R. 210.12, and 12A O.S.A. 4–104(1)(h) was midnight December 1 for the first check and midnight December 3 for the second check. Additionally, it was stipulated that neither check was dishonored before the applicable deadline.

These facts establish a prima facie case for the application of 12 C.F.R. 210.12 and 12A O.S.A. 4–302(a), both concerning the necessity of fulfilling the midnight deadline, and thus it became the obligation of appellee at the trial to prove an excuse from these provisions under 12 C.F.R. 210.14 [1] and 12A O.S.A. 4–108(2) [2]. The latter regulations in essence prevent the operation of the midnight deadline in cases when the delay by the payor bank is caused by the interruption of communication facilities, suspension of payments by another bank, war, emergency condition or other circumstances beyond the control of the bank provided it exercises such diligence as the circumstances require.

In furtherance of its contention, American National presented evidence that prior to December 1, 1969, it had performed its bookkeeping functions by machine posting, a so-called manual system. During 1969, however, a decision was made to implement a computer bookkeeping operation, and a rental agreement was entered into with a large computer company. That lease provided that all repairs and maintenance were the obligation of the computer firm, and

American National was not authorized to undertake any such tasks. After the installation of the computer, American National paralleled its manual system with computer operations for approximately two weeks. Finally the decision was made to change over to computer processing beginning on December 1. A last manual posting was made on Saturday, November 29, and the manual bookkeeping equipment was removed from the bank during that weekend.

At approximately 10:00 a. m. on December 1, the first day for use of computer operations, the American National computer developed a "memory error" which rendered it unusable. Though the computer manufacturer indicated repairs would not take "too long", they lasted until late Monday night and the testing procedure extended into the early hours of Tuesday, December 2.

In reliance upon the belief that the computer would be repaired without prolonged delay, American National took no extraordinary steps to process Monday's business during the business day. However, when it became apparent that evening that the computer was not going to be ready immediately, American National decided to utilize an identical computer in a bank which was a trip of some 2½ hours away, in accord with a backup agreement they had made with the other banking institution. Thus at about 11:30 p. m. personnel from American National and the computer company be-

---

1. 12 C.F.R. § 210.14 Timeliness of action.

   If, because of interruption of communication facilities, suspension of payments by another bank, war, emergency conditions or other circumstances beyond its control, any bank (including a Federal Reserve bank) shall be delayed beyond the time limits provided in this part or the operating letters of the Federal Reserve banks, or prescribed by the applicable law of any State in taking any action with respect to a cash item or a noncash item, including forwarding such item, presenting it or sending it for presentment and payment, paying or remitting for it, returning it or sending notice of dishonor or nonpayment, or making or providing for any necessary protest, the time of such bank, as limited by this part or the operating letters

of the Federal Reserve banks, or by the applicable law of any State, for taking or completing the action thereby delayed shall be extended for such time after the cause of the delay ceases to operate as shall be necessary to take or complete the action, provided the bank exercises such diligence as the circumstances require.

2. 12A O.S.A. 4–108(2) Delay by a collecting bank or payor bank beyond time limits prescribed or permitted by this Act or by instructions is excused if caused by interruption of communication facilities, suspension of payments by another bank, war, emergency conditions or other circumstances beyond the control of the bank provided it exercises such diligence as the circumstances require.

gan processing Monday's business on the backup computer and continued processing through the night. This work had proceeded to the point of capturing the items on discs when, because the backup computer was required by its owner and because they were informed their own computer was operational, the American National personnel returned to their bank to complete the work on their own machine. After returning to American National, the work was processed to the point of completing the printing of the trial balances when another memory error developed which again rendered the computer unusable. No further use could be made of the appellee's computer until a new memory module was installed on Thursday, December 4.

Because of the second failure, American National was forced to utilize the backup computer both Wednesday and Thursday during times it was not required by its owner. Monday's business was completed and work was begun on Tuesday's items the evening of Tuesday, December 2. Tuesday's items were not completed until either Wednesday, the third, or Thursday, the fourth. When the second check arrived in Tuesday's business, it was held to determine if a later deposit had balanced the account. Through the use of the backup computer and then its own computer during the next weekend, American National was fully "caught up" by Monday, December 8.

Based upon this evidence, the trial court held that the computer malfunction suffered by American National was the cause of its failure to meet its required midnight deadline on the checks, and that such malfunction constituted both an emergency condition and a circumstance beyond the control of the bank as outlined in 12 C.F.R. 210.14 and 12A O.S.A. 4–108(2). The court further held that the reaction to the situation by American National fulfilled the requirements of diligence imposed by those regulations, and therefore the court entered judgment for American National on both checks.

Appellant has urged several grounds for the reversal of this judgment, none of which we find merits that action. Though § 4–108(2) of the Uniform Commercial Code is in effect in the vast majority of states, we find no reported cases interpreting or defining this particular provision of the Code. And, of course, our obligation in this appeal is to apply this statute as would the Supreme Court of the State of Oklahoma. Primarily we are faced with reviewing a factual determination by the trial court, and its findings will be affirmed unless clearly erroneous.

Appellant's first contention is that the computer malfunction experienced by appellee was not the cause of the failure to notify on either check and thus could not excuse that lack of action. Though the trial court did not expressly rule upon this causation issue, it impliedly held that the delay in notification was a result of the computer breakdown in both instances, we believe that holding is not clearly erroneous.

As to the first check, it is true that it was processed and stamped insufficient on Saturday, however it was held for Monday's business to allow any deposits made on Monday to balance the account before notice was required. This procedure is reasonable, and only the subsequent computer breakdown prevented timely notice upon the check. In the case of the second check, appellant contends that problems involved in balancing the "proof batches" caused the delay, not the unavailability of the computer. Such a contention ignores the problems encountered by the bank on Tuesday as a result of the delay in processing Monday's business. Tuesday's work was delayed first by the necessity of driving $2\frac{1}{2}$ hours each day before work could commence, and second by the necessity that Monday's business be completed first. Without doubt, both of these delays resulted from the computer problems at American National.

Further appellant contends that a computer failure, as a matter of

law, is not an event which can impose the application of 12A O.S.A. 4–108(2). In our opinion, such a determination is a mixed question of fact and law; however, neither treatment justifies the reversal of the trial court's determination in this case. Factually, it was in no way erroneous to conclude that the malfunction created an emergency condition in the bank and was also a condition beyond the control of the bank. Appellant's argument that in law this malfunction is not included within the prescribed contingencies of § 4–108 (2) is without foundation. The statute is clear and unambiguous on its face, and we need not resort to interpretive aids as urged by appellant. Our judgment coincides with that of the trial court that a computer failure such as in this case qualifies for the application of the statute. Additionally, this court has previously indicated that the views of a district judge who is a resident of the state where the controversy arose in a case involving interpretation of laws of that state carries extraordinary persuasive weight on appeal.[3]

Port City next alleges that the trial court erred in its determination that American National exercised "such diligence" as the circumstances required. Basically, appellant asserts three alternative procedures that American National could have employed, and asserts that if any of these alternatives would have resulted in meeting the deadline, then appellee did not exercise diligence under the circumstances. As the trial court correctly concluded, the statute does not require perfection on the part of appellee, and American National's performance should not be judged on the basis of 20-20 hindsight.

It must first be noted that appellee quickly notified the computer firm of the breakdown, and that company began an immediate repair effort. Further, there was evidence to indicate that such computer breakdowns are generally repaired very quickly. Thus it would appear that appellee was justified in its initial delay in adopting emergency procedures based on its belief such measures would prove unnecessary. Additionally, we must agree with the trial court that appellee's duty under these circumstances was much broader than one requiring merely that it meet its midnight deadline. It was further obligated to keep the bank open and to serve its customers. To abandon the orderly day by day process of bookkeeping to adopt radical emergency measures would have likely prolonged the delay in returning the bank to normal operations.

■ As to appellant's assertion that appellee should have returned to manual posting, it was shown that the equipment for this procedure was no longer in the bank. Further, no clear evidence was presented to indicate such a procedure would have allowed appellee to fulfill its deadlines if the procedure had been implemented. Any decision to return to manual posting would have to have been made very soon after the discovery of the initial failure. At that time, because of their own experience with computers and the industry history, and also because the manufacturer did not foresee the serious nature of the repairs, American National was justified in believing its computer would be back in service soon. Their delay in commencing emergency operations was reasonable, and these facts prevented a return to manual posting in time to fulfill the deadlines.

As to the possibility of utilizing another backup computer at the regional headquarters of the computer leasing firm, we must agree with the trial court that there was no evidence that this al-

3. Marken v. Goodall, 478 F.2d 1052 (10th Cir. 1973); Hardberger & Smylie v. Employers Mut. Liab. Ins. Co., 444 F.2d 1318 (10th Cir. 1971); Hamblin v. Mountain States Tel. & Tel. Co., 271 F.2d 562 (10th Cir. 1959).

ternative would have proved any more successful than the method actually employed by appellee.

In regard to the last alternative, "sight posting", the evidence is conflicting but sufficient to indicate it is not clear this alternative was so obviously superior as to be mandated under these circumstances. There were differing estimates as to the time required, and it was indicated such a procedure would upset and delay the eventual computer bookkeeping required to return the bank to current status. And as in the consideration of the previous alternatives, it was not clearly demonstrated that this procedure would have allowed American National to meet its deadlines even if it had been adopted.

■ Appellant asserts two other grounds for reversal that merit some discussion here. First, they assert that if the first check was only for $72.00, then it was not insufficient and thus the appellee is liable. This argument ignores the fact that the check had been encoded for $72,000 and thus had to be returned before proper credits could be advanced. Additionally, Oklahoma statutes and case law provide that a check is not an assignment of funds held by the drawee and fixes no liability on the drawee until its accepts or pays an instrument.[4]

■ Next appellant asserts that appellee adopted an order of payment that ignored first-in-first-out, and argues that appellee should be liable as a result. However, as appellant indicates in its brief, there is no case law or statute establishing such a procedure as mandatory. We find no merit in such a contention.

Lastly, the parties have asserted several contentions concerning the proper face amount of the first check and the measure of damages under the applica-

ble provisions of the code. However, as we affirm the trial court's holding denying liability, the discussion of these contentions is unnecessary.

Affirmed.

---

4. 12A O.S.A. 3–409(1); Mid-Continent Cas. Co. v. Jenkins, 431 P.2d 349 (Okl.1967); First Nat'l Bank v. Whitelock, 181 Okl. 431, 74 P.2d 355 (1937).