2004 OK 45

Charles H. HOUGH, Plaintiff/Appellant,

v.

Ashley H. HOUGH, Defendant/Appellee.

No. 96,862.

Supreme Court of Oklahoma.

June 8, 2004.

B. David Sisson of Norman, OK, for Plaintiff/Appellant.

George H. Brown and Lee F. Peoples of Klingenberg & Associates, P.C., of Oklahoma City, OK, for Special Master/Appellee.

LAVENDER, J.

¶ 1 The issue in the present cause is whether the trial court abused its discretion in determining that its order requiring Husband to pay the fees and costs of the special master and the order awarding a judicial lien to special master to secure such payment, were intended to provide support for the wife and thus, non-dischargeable in bankruptcy. We hold that the trial court did not abuse its discretion in making such determinations in this case and the COCA erred in vacating the portion of the trial court's order denominating the special master's fees as support for the wife and the portion of the order providing the judicial lien is non-dischargeable.

## I

### FACTS AND PROCEDURAL HISTORY

¶ 2 Husband filed for divorce from Wife on February 12, 1997. This case involves a complicated marital estate, which included the parties' co-ownership of two businesses (A–C Air and A–C Rentals, Inc.[1]) and 44 rental properties, but Husband maintained exclusive control over the businesses, properties and income therefrom. Wife was primarily a homemaker and mother of two daughters during the 16–year marriage, while Husband operated the businesses.

¶ 3 Evidence reflects that throughout the course of this litigation, Husband was generally uncooperative in discovery and in compliance with the trial court's orders[2], he intentionally misused and/or dissipated joint business funds[3], and that he provided incomplete, false and/or misleading information to the court concerning his true income[4] and/or

---

1. Husband disputed the characterization of this business entity as marital property, as he claimed it was created during the parties' previous separation/divorce proceeding, which was dismissed in 1996 upon the parties' reconciliation. Husband argued that at the time AC Rentals, Inc. was created, two trusts were created for the parties' respective separate benefit, which holds all the stock for AC Rentals, Inc. with Husband owning 55% of the shares and Wife owning 45% of the shares. Ultimately, in its March 25, 1999 Order, the trial court concluded that "the disputed property (the corporate stock placed in the respective irrevocable trusts of the parties) is a part of the marital estate and subject to equitable division."

2. The record contains numerous applications for contempt of court filed by Wife for Husband's failure to comply with court orders, i.e., failure to pay temporary support alimony and child support and other court-ordered expenses for the month of June, 1998, failure to pay special master's fees and parenting coordinator's fees, and failure to pay the lump sum property division payment of $75,000 pursuant to the Consent Decree of Divorce. Special master also applied for indirect contempt citation for Husband's refusal to produce documents in response to special master's discovery requests, which resulted in the trial court's issuance of a February, 8, 2000 Citation for Indirect Contempt of Court for Husband's knowing, wilful, and intentional failure to comply with the trial court's August 27, 1999 order compelling production of such documents.

3. The record reflects that throughout the divorce proceedings, Husband demonstrated a pattern of excessive spending with a failure to document and/or explain such expenditures. Additionally, evidence was presented regarding Husband's wire transfers in excess of $47,000 to various accounts including accounts in Venezuela, South America purportedly to pay gambling debts. Additionally, Husband failed to disclose the existence of a safe deposit box containing $21,000 cash, which was ultimately discovered through investigative efforts of the special master and seized pursuant to the trial court's emergency order of December 21, 1999.

4. One such piece of evidence included a residential loan application of June 4, 1998 (attached as an exhibit to Wife's September 16, 1998 Amended Motion to Modify Temporary Order as to Temporary Support), upon which Husband was listed as a co-borrower, wherein he indicated his income from A–C Air was $5,000 per month and that his net income from A–C Rentals, Inc. was $13,000 for a total of $18,000 per month. Husband's support obligation had previously been determined on the basis of income he reported to the court in April, 1997, and although that income amount used by the court in making its

the value of the two businesses in an apparent attempt to decrease his support obligation for his wife and children.

¶ 4 Given Husband's misconduct, Wife filed a motion to appoint a special master "to oversee all matters relating to the marital estate of the parties ... to determine the value of the marital estate, to conduct discovery regarding the estate, to control the Husband's ability to further dissipate the estate, to determine the Husband's prior dissipation of the marital assets and all other such matters regarding the estate."[5] Wife's motion specifically requested the need for a special master, who would be both an attorney and certified public accountant, given the "diverse nature of the marital estate" and noted such an appointment would spare the parties "considerable time and expense of hiring two experts for the same purpose."[6] Wife proposed the appointment of attorney/C.P.A. Ken Klingenberg to serve as special master, with such fees and costs of the special master to be paid by Husband. Husband objected to the appointment of a special master "as being outside the scope of any Statutory authority and there being no case law for same."[7]

¶ 5 The trial court ultimately entered the following Order:

> [A]ppointment of a special master will be of benefit to the Court in matters relating to discovery, valuation and preservation of the marital estate ... [and such special master] shall have control of all matters relating to discovery, valuation and preservation of the marital estate (including the two businesses); shall control Plaintiff's ability to expend the marital estate and to determine the Plaintiff's prior expenditures and/or depletion of the marital assets; and shall control all other matters regarding the marital estate. Said fees and costs shall be paid by the [Husband] from the marital estate."[8]

Husband thereafter filed his Motion to Discharge Special Master[9] on March 12, 1999,

---

initial determination is unclear from the record, the initial support alimony/child support award was $1,800 per month. In Husband's handwritten *pro se* Motion to Modify Temporary Order of October 12, 1999, while he did not dispute the income amount he listed in the residential loan application (certified as true and correct by Husband's signature thereon as of June 4, 1998), he attacked such evidence as "primitive technique of determining income for child support purposes," arguing that his actual monthly income at the time was $2,164. The trial court modified the temporary support amount to $2,880 per month in light of the evidence presented concerning Husband's true income and also additional evidence presented concerning Husband's recent major expenditures (such as $2,369.00 for a tanning bed, $1,653.86 to "Victoria's Secret," and $8,279.00 to Ballard Ford on behalf of Husband's girlfriend), which demonstrated Husband's ability to pay the additional amount requested by Wife.

5.  Wife's Amended Motion to Modify Temporary Order as to Temporary Support and Visitation Schedule and for Temporary Attorneys Fees and Suit Money, September 16, 1998, p. 14 ¶ 45.

6.  *Id.* at ¶ 46.

7.  Plaintiff's Response to Appointment of Special Master, September 29, 1998, p. 1.

8.  The parties to the appeal refer to this Order [of appointment of the special master] as the Order of September 21, 1998, but we note this Order was actually file-stamped on December 14, 1998. For purposes of clarity, we will simply refer to this order as the order of appointment. See Order of Appointment p. 2, ¶ 5. This Order provided for the appointment of Ken Klingenberg as special master unless Husband provided written objection within five (5) days of the Order. Husband filed his objection with his September 29, 1998 Response to Appointment of Special Master, and, without waiving his general objection to the appointment of a special master in the case, he proposed the appointment of an alternate special master, Virginia Meadows, President/CEO of Washita State Bank. Wife objected to the alternate master, citing lack of expertise and conflict of interest reasons due to Husband's longstanding and ongoing business relationship with Washita State Bank. In its Order of October 1, 1998, the trial court formally appointed Ken Klingenberg and rejected Husband's alternate special master due to an appearance of conflict of interest.

9.  Husband's Motion asserted the appointment of a special master in this case was inappropriate, as "this is a relatively simple divorce case that is being completely blown out of proportion." Husband additionally complained that special master appeared to be taking on the role as an advocate for the wife, given special master's position that the AC Rentals, Inc. business constituted marital property. See Husband's Motion to Discharge Special Master, p. 11.

which the trial court subsequently denied. Husband continued his quest for discharge of the special master with the filing of his Application to Assume Original Jurisdiction and Petition for Writ of Mandamus and Prohibition with this Court, which was unanimously denied on July 12, 1999.[10]

¶ 6 The parties' divorce proceedings ended in settlement on September 8, 2000, with the issue of attorney fees and costs expressly reserved in the Consent Decree of Divorce. Special master thereafter filed his Application for Attorneys Fees on September 15, 2000, seeking fees and costs in the amount of $43,404.98. Husband reiterated his objections to special master's Application for payment of fees and costs, arguing that "the initial referral to a special master was ultra vires in that there was no good cause for the appointment," the trial court's order granting the special master authority to conduct discovery was improper, vague and overly broad, and the fee was excessive. During the pendency of the trial court's consideration of the reserved issues of fees and costs including those of the special master, Husband filed his Chapter 13 Bankruptcy Petition in the U.S. Bankruptcy Court in March, 2001.[11] Special master filed his Amended Application for Payment of Attorney's Fees with the trial court on August 27, 2001, seeking additional fees since the filing of the original Application for a total fees and costs of the special master of $48,703.40.

¶ 7 On September 4, 2001, the trial court granted special master's Application for Payment of Attorney's Fees and approved total payment of fees and costs in the amount of $48,703.40, and further granted special master a judicial lien in that amount over all property awarded to Husband from the marital estate, and determined such "judicial lien

shall not be discharged by [Husband] in bankruptcy." Additionally, the trial court determined as follows:

> [t]he initial order requiring the [Husband] to pay the fees and costs of the Special Master from the marital estate and the order awarding a judicial lien to the Special Master, were intended to provide support to the [Wife] ... by allowing her to use the money awarded to her for support instead of using the money for payment of the attorney's fees and costs of the Special Master.

Finally, the trial court concluded "[t]hat substantially all efforts expended by the Special Master in ensuring compliance with discovery order, valuation and preservation of the marital estate, were necessitated by the [Husband's] hindrance, delay and general 'uncooperativeness' in this case; and that such an award as stated above is more than reasonable, considering the [Husband's] actions taken in this case."

¶ 8 Husband appealed, arguing the trial court erred in the following respects: (a.) the trial court improperly delegated judicial authority to the special master; (b.) the trial court's order was vague and overbroad in its appointment of special master to conduct "blanket discovery" in a case that does not present complex issues of accounting or valuation; (c.) the trial court erred in awarding special master fees in this case because there is no statutory basis for such award; (d.) the order surpasses the relief prayed for by improperly granting a judicial lien against Husband's property and finding that fees were intended for support of Wife and determining that the fees are not dischargeable in bankruptcy. COCA affirmed the order awarding special master fees and costs in the amount

---

10. Oklahoma Supreme Court case no. 93,101.

11. Special master's Answer Brief and Petition for Certiorari contain specific information concerning the Bankruptcy proceeding including the assertion that special master sought relief from the automatic stay, which was granted by the Bankruptcy Court on July 23, 2001. Additionally, special master asserts "[t]he Bankruptcy Court lifted the automatic stay so that the trial court could decide the interest of the special master in the divorce." In his Petition for Certiorari, special master criticizes the COCA in this case for

"ignor[ing] that the Bankruptcy Court expressly asked the trial court to make such a determination [that the special master's fees were in the nature of support and not dischargeable in bankruptcy]." Husband's brief contains merely an acknowledgment that he filed his Chapter 13 Bankruptcy Petition on March 7, 2001 and that "events in the bankruptcy court lie outside the record." While we note the record is silent concerning the bankruptcy, we also note Husband did not dispute any of special master's assertions regarding the bankruptcy proceedings.

of $48,703.40, but vacated the portion of the order determining special master's fees as support for the Wife and further vacated the trial court's determination that the judicial lien was non-dischargeable in bankruptcy. Special master filed his Petition for Certiorari.[12]

## II

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN CHARACTERIZING SPECIAL MASTER'S FEE AWARD IN THE NATURE OF SPOUSAL SUPPORT AND DETERMINING THAT JUDICIAL LIEN GRANTED TO SECURE HUSBAND'S PAYMENT OF SUCH FEE NON-DISCHARGEABLE IN BANKRUPTCY

¶ 9 As a starting point, we note that an action for divorce, alimony and division of property such as this one is one of equitable cognizance and in reviewing a case of equitable cognizance, the judgment of the trial court will not be disturbed unless the trial court abused its discretion or unless the court's finding was clearly against the weight of the evidence. *Merritt v. Merritt,* 2003 OK 68, ¶ 7, 73 P.3d 878, 882, *cert. denied,* ——

U.S. ——, 124 S.Ct. 820, 157 L.Ed.2d 697 (2003); *Creech v. Creech,* 1956 OK 10, 292 P.2d 376, 378; *Tschauner v. Tschauner,* 1952 OK 230, 245 P.2d 448. In this case, the COCA concluded that the trial court abused its discretion in its determination that its Order requiring Husband's payment of special master's fee was "intended to provide support to [Wife]" and ordering that the judicial lien (granted to secure Husband's payment of special master's fees) shall not be discharged in Husband's bankruptcy. The COCA based its determination on the unsupported basis that "special master's fees and costs are not support for Wife. The fees were not paid to Wife for her use." The COCA further reasoned that 12 O.S. § 619[13] does not provide that a referee's compensation be intended to support a party in a divorce action." Finally, the COCA concluded "[t]he trial court has no judicial authority to declare the judicial lien or special master's fees non-dischargeable in bankruptcy. This determination is for the bankruptcy court."

¶ 10 We disagree with the COCA's conclusions. Consistent with and pursuant to the exceptions to discharge section of the U.S. Bankruptcy Code, 11 U.S.C. § 523(a)(5) (2000)[14], Oklahoma courts recognize that an award in the nature of alimony, maintenance

---

**12.** Husband did not file a response to special master's Petition for Certiorari, nor has he requested certiorari review of the issues he lost before the COCA. Therefore, his failed challenges regarding the propriety of the appointment of the special master, the scope of authority and/or conduct of the special master in the case, the scope of the relief granted in the trial court's order in granting the judicial lien, and the award of the special master's fees and costs taxed against Husband have not been properly preserved for review and therefore, will not be considered by us on certiorari. *See Hough v. Leonard,* 1993 OK 112, 867 P.2d 438; *May–Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.,* 1999 OK 87, ¶ 7, 20 P.3d 135, 143 (Opala, J., Supplemental Opinion).

**13.** 12 O.S.2001 § 619 provides as follows: "The referees shall be allowed such compensation for their services as the court may deem just and proper, which shall be taxed as part of the costs in the case." *Id.* Reference of accounting matters to a special master or referee is specifically authorized by statute. 12 O.S. § 613; *see State ex rel. Smith v. District Court of Osage County,* 1941 OK 128, 112 P.2d 381 (1941). We have

held that "special judges may be used in contested matrimonial disputes as referees to aid the court with resolution of complex valuation or accounting issues." *Lee v. Hester,* 1982 OK 30, 642 P.2d 243, 245. The COCA has also held that compensation of special masters shall also be taxed as costs pursuant to § 619 and that the trial court may award and tax costs as in its discretion it determines is 'right and equitable.' " *Oklahoma Oil & Gas Exploration Drilling Program v. W.M.A. Corp.,* 1994 OK CIV APP 11, 877 P.2d 605, 612.

**14.** 11 U.S.C. § 523.(a) (2000) provides in pertinent part as follows: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . . ."

or support of the spouse or child may not be discharged in bankruptcy. *Battles v. Battles,* 1952 OK 2, 239 P.2d 794; *Owens v. Owens,* 1995 OK CIV APP 17, 897 P.2d 1145 (Released for publication by Order of the Supreme Court of Oklahoma). Oklahoma state courts have exercised their judicial authority in divorce actions to determine whether the nature of an obligation arising out of a divorce is intended for support and maintenance of the spouse and therefore, may not be discharged in bankruptcy as opposed to dischargeable property division. *See, e.g., Battles,* 239 P.2d at 796 (holding obligation arising out of a contract between husband and wife was substantially for maintenance and support of wife and therefore not discharged by husband's bankruptcy); *Turman v. Turman,* 1968 OK 33, 438 P.2d 488 (holding court-decreed obligation to pay attorneys' fees is in the same category as the obligation to pay alimony); *Johnson v. Johnson,* 1969 OK 142, 460 P.2d 954 (holding the purpose behind the divorce decree award to wife was to provide for her support and maintenance and is therefore, non-dischargeable in bankruptcy even though the decree did not expressly designate the award as in the nature of support); *Davis v. Davis,* 1979 OK 40, 593 P.2d 88 (holding state law governs the determination whether a decree-imposed obligation to pay a jointly incurred marital debt was in the nature of non-dischargeable spousal support or dischargeable property division); *Owens,* 897 P.2d at 1147 (holding divorce-decree imposed obligation to pay two mortgages on the parties' jointly held real property is in the nature of support and non-dischargeable in bankruptcy). While we recognize there is federal case law, which provides the determination of whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance or support is a matter of federal bankruptcy law, *see, e.g., Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989), our state courts have concurrent jurisdiction to determine this question. *See Davis,* 593 P.2d at 90; *Owens,* 897 P.2d at 1147; *Riedel v. Riedel,* 1992 OK CIV APP 166, 844 P.2d 184, 186; *see also In re Franklin,* 179 B.R. 913, 920 (Bankr.E.D.Cal.1995) (providing the general rule is that state and federal courts have concurrent jurisdiction to decide the issue whether a divorce-based debt is in the nature of non-dischargeable alimony or support). Additionally, federal courts look to state law for guidance in determining whether a particular obligation arising out of a divorce action is a non-dischargeable obligation in the nature of alimony, maintenance or support. *See In re Lane,* 147 B.R. 784, 786 (Bankr.N.D.Okla.1992) (listing seven factors to be considered, the first of such factors being how the state court labeled the award). In this case, special master asserts that the Bankruptcy Court requested the trial court's determination as to whether Husband's obligation to pay special master's fees and costs was in the nature of support and therefore, non-dischargeable. Although we cannot confirm the veracity of special master's assertion because of the absence of evidence in the record regarding the Bankruptcy Court proceedings, we note Husband does not dispute this assertion. However, even if the Bankruptcy Court had not specifically requested the trial court's conclusions in this regard, we hold it was nonetheless proper for the trial court to make such a determination in this case that Husband's obligation arising out of the divorce action to pay the fees and costs of special master was in the nature of support and non-dischargeable in bankruptcy.

¶ 11 *Turman v. Turman* and *Owens v. Owens* further clearly demonstrate there is no requirement that the payments pursuant to an award arising out of an Oklahoma divorce action be paid directly to the spouse in order to constitute an obligation in the nature of alimony, maintenance or support. In *Turman,* the obligation deemed in the nature of alimony was not to be paid directly to the former spouse, but rather, directly to her attorney for fees for legal services in representing the former spouse in the subject divorce action she instituted. *Turman,* 438 P.2d at 490. The obligation in *Owens,* which was determined there to be in the nature of support was the husband's divorce-decree imposed obligation to pay two mortgages on the parties' jointly held real property including the marital home. *Owens,* 897 P.2d at 1147. In both *Turman* and *Owens,* while the former spouse in each respective case was the recipient of the benefit

of the award in that she was spared the burden of having to pay a debt arising out of a divorce, it was a third-party, namely the former spouse's attorney in *Turman* and the mortgagee in *Owens*, which actually received direct payment. We further note the reasoning in *Turman v. Turman* is notably applicable in this instance. In *Turman*, we recognized "the necessity of the services of [the former spouse's] attorney, and that the provisions for payment for said services is a necessary cost, or expense, in an action for divorce and alimony, and to Insure ... the 'efficient preparation' and 'prosecution or defense of such an action.'" *Turman*, 438 P.2d at 490 (citations omitted). Finally, we determined that "the obligation to pay the attorney fee assessed against the bankrupt for such services is an 'accessory' to the alimony and 'follow(s) the nature of the liability' therefor, just as truly as do the costs of the action." *Id.* (quoting *Smith v. Smith*, (D.C., W.D., N.Y.) 7 F.Supp. 490, 491). In this case, the record is clear the trial court's appointment of a special master was necessitated by the recalcitrant actions of Husband (in dissipating marital assets and his defiant, uncooperative discovery tactics) and by the complex nature of the marital estate. The trial court expressly provided in its order of September 4, 2001, that the order requiring Husband to pay special master's fees and costs and the judicial lien granted to special master over Husband's property to secure such payment were intended to provide support to the [Wife] "by allowing her to use the money awarded to her for support instead of using the money for payment of the attorney's fees and costs of the special master." Given the complexities of the accounting matters of the case and the particular need for special master's control over the marital estate to prevent Husband's dissipation thereof, the necessity of the services of the special master in this case was no less compelling than the necessity of the services of the former spouse's attorney in the divorce at issue in *Turman*. Further, just as the attorneys' fee in *Turman* was deemed an accessory to alimony, the obligation to pay the special master's fees and costs assessed against the bankrupt Husband for such services in this case is likewise akin to an accessory to the alimony and follows the nature of the liability therefor. Therefore, the COCA erred in its determination that because special master's fees "were not paid to Wife for her use," they may not be categorized as in the nature of support. We hold the trial court properly exercised its judicial discretion in its determination that its order requiring Husband to pay special master's fees and costs from the marital estate and the order awarding a judicial lien to special master were intended to provide support to Wife and therefore, non-dischargeable in Husband's bankruptcy.

## III

### SPECIAL MASTER'S MOTION FOR APPEAL–RELATED ATTORNEY'S FEES

█ ¶ 12 Special master filed his "Motion for Appellate Attorney's Fees" pursuant to 12 O.S. § 696.4(C), such motion having been separately identified and contained within his Answer Brief on appeal. In addition to citation to 20 O.S. § 15.1 [15] and one COCA case construing § 15.1, special master additionally argues "compelling and overriding equitable considerations created by Husband's delay, hindrance and general uncooperativeness" justifies the award of appeal-related attorney's fees to special master in this case.

█ ¶ 13 The general rule is "[a]ppeal-related attorney fees are recoverable if statutory authority exists for their award in the trial court." *Casey v. Casey*, 2002 OK 70, ¶ 26, 58 P.3d 763, 772 (footnotes omitted). This case presents a unique question concerning a non-party's quest for appeal-related attorney's fees. We are unaware of express statutory authority for the recovery of a special master's *attorney fees*. However, statutory authority exists for the award of "*compensation* [to referees] for their services

---

**15.** 20 O.S. § 15.1. Appeals—Additional attorney fees

"On any appeal to the Supreme Court, the prevailing party may petition the court for an additional attorney fee for the cost of the appeal. In the event the Supreme Court or its designee finds that the appeal is without merit, any additional fee may be taxed as costs."

as the court may deem just and proper, which shall be taxed as part of the costs in the case." 12 O.S. § 619 (emphasis added).[16] Further, § 619 has been interpreted to apply to compensation of special masters. *Oklahoma Oil & Gas Exploration Drilling Program v. W.M.A. Corp.*, 1994 OK CIV APP 11, 877 P.2d 605, 612.

¶ 14 In this case, the trial court ordered Husband to pay the fees and costs of special master and the COCA affirmed this award pursuant to 12 O.S. § 619. While we agree with the lower courts' determination that special master was entitled to recover fees and costs as *compensation* for his services in accordance with § 619, we disagree with the COCA's characterization of § 619 as statutory authority for an *attorney fees* award. Since § 619 does not authorize an attorney fees award in the trial court, it follows that 12 O.S. § 619 is likewise an improper basis for special master's recovery of appeal-related attorney fees.

¶ 15 Special master seeks recovery of appeal-related attorney fees pursuant to 20 O.S. § 15.1, which permits "the prevailing party [to] petition the court for an additional attorney fee for the cost of the appeal." We have construed this statute to permit the recovery of appeal-related attorney fees against an appealing party bringing a "patently frivolous appeal," which is an appeal with "absolutely no legitimate legal or factual basis." *TRW/Reda Pump v. Brewington*, 1992 OK 31, 829 P.2d 15, 22. Based upon our review of the record, it cannot be concluded that Husband's appeal lacked any legitimate legal or factual basis, although Husband was ultimately unsuccessful. Since Husband's appeal cannot be characterized as patently frivolous, special master is therefore not entitled to recovery of his appeal-related attorney fees pursuant to 20 O.S. § 15.1.

¶ 16 Finally, to the extent special master's assertion of "compelling and overriding equitable considerations" equates to a demand for the balancing of judicial equities as between special master and Husband, special master cites no authority in support of the application of such a balancing of judicial equities test as between a non-party special master and a party to an underlying divorce action in support of recovery of appeal-related attorney fees.[17] A proposition which is unsupported by citation to authority will not be considered on appeal. *Witt v. Westheimer*, 1938 OK 249, 79 P.2d 250; *Mid-Continent Cas. Co. v. Jenkins*, 1967 OK 54, 431 P.2d 349; *see Vernor v. Poorman*, 1916 OK 608, 158 P. 615 (providing "attorneys who present cases here have no right to place the burden upon this court and consume their time in a laborious research for authorities to support their argument."). In light of these authorities, special master's Motion for Appeal–Related Attorney's Fees is denied.

IV

**SUMMARY**

¶ 17 In sum, we hold the trial court did not abuse its discretion in characterizing the obligation arising out of this divorce action that Husband pay special master's fees and costs and judicial lien over Husband's property granted to special master to secure payment of such fees and costs as in the nature of support for the Wife and therefore non-dischargeable in Husband's bankruptcy and the COCA erred in determining the trial court lacked judicial authority to make such a determination in this case. The trial court's September 4, 2001 order awarding special master fees and costs in the amount of $48,703.40 is affirmed in its entirety.

¶ 18 Upon certiorari previously granted,

16.  *See supra* note 13.

17.  We recognize the existence of the "balancing of judicial equities" test in the context of an award of counsel fees to a litigant in divorce or subsequent related actions pursuant to 43 O.S. § 110. *See Casey v. Casey*, 2002 OK 70, ¶ 26, 58 P.3d 763, 772. However, special master does not cite § 110 in support of his quest for appeal-related attorney fees here. We have recently held 43 O.S.2001 § 110(D) "only gives a trial court discretionary equitable authority to award attorney fees *for or against the two original parties* to the divorce case, i.e., the divorced spouses, based on a *judicial balancing of the equities between those two parties*." *Fulsom v. Fulsom*, 2003 OK 96, ¶ 1, 81 P.3d 652, 654 (emphasis added). Section 110 was amended in 2002 and 2003. Subsection 110(D) is now found at § 110(E).

THE COURT OF CIVIL APPEALS' OPINION IS VACATED; JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

¶ 19 WATT, C.J., HODGES, HARGRAVE, KAUGER, BOUDREAU, WINCHESTER and EDMONDSON, JJ., concur.

¶ 20 OPALA, V.C.J., concurs in part; dissents in part.

OPALA, V.C.J., dissenting in part.

¶ 1 The court reverses today the trial court's counsel-fee award to the special master and denies his appeal-related attorney's fee quest. **I agree** with the court's pronouncement insofar as it rejects the notion that the provisions of 43 O.S.2001 § 110(D) are invocable here to support the special master's claim for a counsel-fee award. **I disagree** that the fee award is not sustainable by another legislative source. The provisions of 12 O.S.2001 § 936[1] authorize an allowance of attorney's fee in an action to recover "for services." A special master's claim for professional services is clearly comprised within the purview of § 936.

**I**

**A SPECIAL MASTER'S QUEST FOR AN ATTORNEY'S FEE PRESENTS AN ANCILLARY CLAIM**

¶ 2 The court has apparently adopted the mistaken view that a special master's compensation quest is not fit for classification as a claim. **I disagree.** It is as much a court claim as any other. It falls under the rubric of *ancillary claims.* Our pronouncement in

Rand v. Nash[2] empowers a judge to appoint an "arm of the court" to secure needed services. One so appointed has an ancillary claim for the value of services performed.[3] A dispute over liability for the services may be treated by a court as ancillary to a case.[4] The special master's counsel-fee quest for trial-related legal services stands preserved here by his timely nisi prius request and by his later demand, made both in the petition in error and the brief, for an appeal-related attorney's fee.

**II**

**THE SPECIAL MASTER'S COUNSEL–FEE AWARD SHOULD BE AFFIRMED BASED ON A DIFFERENT LEGISLATIVE AUTHORITY SOURCE FROM THAT INVOKED BY HIS COUNSEL**

¶ 3 The special master's claim to affirmance of his nisi prius counsel-fee award is neither **fatally** nor **eternally** flawed by his erroneous district-court reliance on the terms of 43 O.S.2001 § 110(D). A nisi prius judgment or order must be affirmed if it is supported by any applicable legal principle.[5] This court's decision in *Barnes v. Oklahoma Farm Bureau Insurance Co.*[6] conflicts with its fee rejection today. In *Barnes*[7] the court invalidated the wrongly rested counsel-fee award but remanded the cause with directions that the plaintiff be permitted to explore for the availability of other authorities. *Barnes* supports the view that **no litigant should be barred from relief by rely-**

---

1. For the pertinent terms of 12 O.S.2001 § 936 see *infra note* 8.

2. 1935 OK 1086, ¶ 8, 51 P.2d 296, 298.

3. The district court is duty-bound to consider an ancillary claim correctly invoked by one whom the court appointed to render service in a case. *Rand, supra note* 2 at ¶ 8, at 298.

4. *Tisdale v. Wheeler Bros. Grain Co.*, 1979 OK 94, ¶ 3, 599 P.2d 1104, 1105; *Chicago R.I. & P.R. Co. v. Rittenhouse, Hanson, & Evans*, 1955 OK 133, ¶ 10, 285 P.2d 186, 189; *Opperud v. Bussey*, 1935 OK 1221, ¶ 14, 172 Okla. 625, 46 P.2d 319, 321; *Simpson v. Baker*, 1926 OK 957, ¶ 6, 123 Okla. 118, 252 P. 834, 835.

5. There is no need here to comment on the now-rejected legal authority the district court assigned to support its fee allowance. A legally supportable judgment must be affirmed, even though rested below on an incorrect legal premise. *Myers v. Lashley*, 2002 OK 14, ¶ 7, 44 P.3d 553, 557; *Akin v. Missouri Pacific R. Co.*, 1998 OK 102, ¶ 35, 977 P.2d 1040, 1054; *Bivins v. State ex rel. Oklahoma Memorial Hosp.*, 1996 OK 5, ¶ 22, n. 40, 917 P.2d 456, 465, n. 40; *Matter of Estate of Maheras*, 1995 OK 40, ¶ 7, 897 P.2d 268, 272.

6. 2000 OK 55, ¶ 57, 11 P.3d 162, 182.

7. *Barnes, supra note* 6.

ing on the wrong statute for securing a counsel-fee award.

## III

### BY THE AUTHORITY OF 12 O.S.2001 § 936 A SPECIAL MASTER MAY BE GRANTED A COUNSEL–FEE AWARD FOR SERVICES INCIDENT TO A § 619 COMPENSATION RECOVERY

¶ 4 The terms of 12 O.S. § 936 [8] **apply to all parties** whose claims for services prove successful, whether in demands pressed by their action or in proceedings ancillary to the action. *Hamilton v. Telex. Corp.* teaches that the totality of an attorney's compensation includes time spent on recovering an earlier court-granted fee.[9] There the quest was rested on the terms of § 936.[10] Here, the special master performed valuable services in a divorce proceeding. His status as an appointed arm of the court pressing an ancillary compensation-for-service claim stands on a footing at least equal to others who provide services dehors a judicial appointment. The § 936 [11] authority **is invocable by all prevailing parties** in a quest for the value of performed services, whether by contract or court appointment. **A compensation claim for a 12 O.S.2001 § 619** [12] **service may not be excluded from the benefit of § 936 without offending the state constitution's mandate for uniformity of court procedure.**[13]

¶ 5 I hence recede from the court's view that § 619—either by its text or by its juris-

prudential gloss—prevents a prevailing service renderer from invoking a § 936 right to a counsel-fee award. The court has indeed used pure *ipse dixit* to pronounce today that a § 619 compensation-for-service recovery will not support the special master's counsel-fee quest. **No extant jurisprudence negates the notion that a prevailing special master in a § 619 proceeding is entitled to an attorney's fee authorized by § 936.**

## IV

### THERE IS NO STATUTORY OR JURISPRUDENTIAL AUTHORITY FOR THE COURT'S *SUB SILENTIO* NOTION THAT A BENEFICIARY OF COURT–GRANTED COMPENSATION FOR SERVICES MAY NOT RECEIVE AN ATTORNEY'S FEE *ABSENT SOME EXPLICIT LEGISLATIVE APPROVAL*

¶ 6 It appears that the court's refusal to affirm the trial court's counsel-fee allowance rests on its unsupportable *sub silentio* assumption. There is no jurisprudential basis for the notion that in the absence of some explicit legislative approval an attorney's fee may not be added to a judge-allowed compensation-for-service recovery to one who acted as a court-appointed arm. Oklahoma case law supports the opposite view. In *Hamilton*[14] this court granted a counsel-fee award to a lawyer for collecting and enforcing his own earlier-granted fee for legal services.[15]

---

8. The pertinent terms of 12 O.S.2001 § 936 provide: "In any civil action to recover for labor or services rendered . . . unless otherwise provided by law . . . the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

9. 1978 OK 33, ¶ 6, 576 P.2d 769, 770.

10. *Hamilton, supra note* 9.

11. Had the special master filed his claim in a separate action, he would have undoubtedly been entitled to relief under § 936.

12. The terms of 12 O.S.2001 § 619 provide: "The referees shall be allowed such compensation for their services as the court may deem just and proper, which shall be taxed as part of the costs in the case."

13. The terms of Art. 5, § 46, Okl. Const., provide in pertinent part: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing . . . [r]egulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts."

14. *Hamilton, supra note* 9.

15. The so-called American rule requires that authority to grant an attorney's fee be rested either on contract or legislation. *Sisney v. Smalley,* 1984 OK 70, ¶ 7, 690 P.2d 1048, 1049; *Garner v. City of Tulsa,* 1982 OK 104, ¶ 32, 651 P.2d 1325, 1329–30. In contrast, **the extent or quantum of an allowable fee recovery may rest solely on a norm of the common law.** *Hamilton, supra note* 9.

¶ 7 Several federal jurisdictions have allowed recovery of additional fees expended for legal service in enforcing a court-granted counsel fee.[16] The United States Court of Appeals for the Ninth Circuit has stated that not awarding an additional expense incurred in counsel-fee collection would "dilute" a counsel-fee allowance.[17] National jurisprudence clearly approves of a counsel-fee award for services rendered in collection and enforcement of a court-granted fee.

¶ 8 A special master performs services pursuant to court appointment. As a prevailing party, a special master is as much entitled to an attorney's fee as are others who sue to recover for services rendered under a contract. If *Hamilton* (and national jurisprudence) allow a lawyer's fee award to be *augmented* by the time spent on enforcing that award, a special master's compensation for court-required services may also be *enhanced by* the value of legal work rendered to secure and enforce the master's judicially approved compensation in the case.

## V

### THE SPECIAL MASTER IS ENTITLED TO AN APPEAL–AS WELL AS A CERTIORARI–RELATED ATTORNEY'S FEE

¶ 9 When statutory authority supports one's quest for an attorney's fee as a prevailing party in a proceeding for services, a counsel-fee award may also be allowed for legal services in the reviewing courts.[18] It is hence appropriate here to authorize an attorney's fee for the special master to compensate him for legal services on review. The provisions of § 936 afford ample legal basis for that award. In short, the special master should be allowed an attorney's fee for appeal- and certiorari-related legal services.

## VI

### THE COURT IS MISTAKEN IN THE AMOUNT OF RECOVERY IT AFFIRMS TODAY

¶ 10 Although the court reverses today the trial court's award of an attorney's fee, it nevertheless mistakenly allows that fee by affirming the nisi prius judgment for $48,703.40. That amount *includes* an attorney's fee.[19] The stated figure is hence plainly in error. According to the record, the sum of $48,730.40 *represents both recovery and attorney's fee* for the trial-related services, rather than solely the § 619 compensation to the master. Severing the total award into two parts—recovery and fee—would be impossible. The materials in the record do not show these figures separately.[20]

## VII

### SUMMARY

¶ 11 I would affirm the award of $48,703.40 for the master's compensation-for-service recovery and for his nisi prius counsel-fee allowance; I would **also** authorize that he be

**16.** *Burke v. Guiney*, 700 F.2d 767, 772 (1st Cir.1983)(allowing a counsel-fee award for contempt sanctions); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1305 (11th Cir.1988)(a claimant was allowed compensation for services rendered until all the court-granted fee was obtained); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 545 (10th Cir.2000)(allowing the collection of post-judgment fees under the provisions of the False Claim Act as well as under the provisions of 42 U.S.C. § 1988). *Vukadinovich v. McCarthy*, 59 F.3d 58, 60 (7th Cir.1995)(awarding costs of collection becomes necessary to carry out a judgment when entitlement to a fee is established).

**17.** *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), aff'd, 550 F.2d 464 (9th Cir. 1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

**18.** *Sisney, supra note* 15 at ¶ 20, at 1051; *Chamberlin v. Chamberlin*, 1986 OK 30, ¶ 13, 720 P.2d 721, 728; *Cook v. Oklahoma Bd. of Public Affairs*, 1987 OK 22, ¶ 46, 736 P.2d 140, 154.

**19.** The 4 Sept. 2001 nisi prius order awarded the special master "fees and costs." These are termed as "said attorney's fees and costs."

**20.** My careful perusal of the record did not yield separate figures either for the total of the special master's § 619 compensation-for-service recovery or for his nisi prius counsel-fee allowance.

granted an additional fee for review-related legal services.