# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2016

Lyle W. Cayce
Clerk

No. 16-30025

M. C. MOORE. as father and next friend to minors Joyce Marie Moore, Jerry Moore, and Thelma Louise Moore,

>      Plaintiff

v.

TANGIPAHOA PARISH SCHOOL BOARD, a corporation,

>      Defendant - Appellant

v.

DONALD C. MASSEY, Court Appointed Compliance Officer, Tangipahoa Parish School Board,

>      Movant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.

PER CURIAM:

In this decades-old school desegregation case, Defendant Tangipahoa Parish School Board (the Board) appeals the district court's order doubling the compensation of Donald Massey, the part-time Court Compliance Officer (CCO) tasked with monitoring the integration efforts of the Tangipahoa Parish

No. 16-30025

School System. Massey, in addition to arguing that we should affirm on the merits, has also moved to dismiss the appeal alleging that we lack jurisdiction. We conclude that we have jurisdiction and affirm.

I

This desegregation case was filed in 1965. In 1967, the district court entered a comprehensive order establishing certain student assignment and facilities requirements aimed at assisting the school district in achieving unitary school system status. Since then the district court has exercised its jurisdiction over this matter and has issued numerous additional orders aimed at reaching this goal. As relevant here, in 2008, the district court created the current CCO position, a part-time monitor tasked with ensuring that the parties comply with the court's orders. As set forth by the district court, the CCO

> shall review and assure that the school district implements the provisions of this Order, collaboratively work with and provide assistance to the Chief Desegregation Implementation Officer, offer suggestions to the school district as to possible methods or procedures which might be implemented to further enhance desegregation aims, and prepare an annual report to the parties and the court as to the progress of the school district's implementation of each of the provisions of this Order.

The district court appointed Massey to this position in August 2014; at the time the position's monthly salary was $4,000.

In 2015, Massey asked the Board for a raise but the Board denied his request. Massey then filed a motion with the district court seeking compensation at an hourly rate. The Board and the plaintiffs jointly opposed the motion. The district court granted the motion, but rather than imposing an hourly rate as Massey had requested, the court increased his monthly salary to $8,000 per month. The Board appealed.

No. 16-30025

II

We must first address whether we have jurisdiction to hear this appeal. The Board argues that jurisdiction lies pursuant to 28 U.S.C. § 1292(a)(1) or alternatively under the collateral order doctrine. Because we conclude that we have jurisdiction under § 1292(a)(1), we decline to consider whether we would also have jurisdiction under the collateral order doctrine.

Typically, appellate jurisdiction is limited to "final decisions of the district courts." 28 U.S.C. § 1291. That is, decisions "by which a district court disassociates itself from a case." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995). But under 28 U.S.C. § 1292(a)(1), we also have jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions." "A district court 'grant[s]' an injunction when an action it takes is 'directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion.'" *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015) (quoting *Police Ass'n of New Orleans Through Cannatella v. City of New Orleans*, 100 F.3d 1159, 1166 (5th Cir. 1996)) (alteration in original); *see also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (order directing city to including towing company on the non-consent tow list was an injunction subject to enforcement by the district court and thus appealable under Section 1292(a)(1)). "A district court 'modif[ies]' an injunction when it 'changes the obligations imposed by the injunction.'" *In re Deepwater Horizon*, 793 F.3d at 491 (quoting CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3924.2 (3d ed. 2014)) (alteration in original). "This court takes a practical view of what constitutes a modification, 'look[ing] beyond the terms used by the parties and the district court to the substance of the action.'"

*Id.* (quoting *In re Seabulk Offshore Ltd.*, 158 F.3d 897, 899 (5th Cir. 1998)) (alteration in original).

In the school desegregation context, the courts of appeals routinely exercise appellate jurisdiction under § 1292(a)(1) over orders like the one at issue in this case. "[E]quitable decrees that impose a continuing supervisory function on the court commonly . . . contemplate the subsequent issuance of specific implementing injunctions" and "[e]ach such injunction is appealable regardless of finality." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 171 F.3d 1083, 1086 (7th Cir. 1999). In *People Who Care*, a case challenging a budget order entered by a magistrate judge for the purpose of funding school integration, the Seventh Circuit observed that the initial desegregation decree was essentially "an injunction generator" allowing the district court to exercise its ongoing supervisory function to ensure the school district achieved and maintained unitary status. *Id.* This is analogous to what is happening in this case. The initial decree issued by the district court in 1967 was "an injunction generator," and the district court's order that the Board increase Massey's salary is a subsequent injunction that flows directly from that original order, and is thus "appealable regardless of finality." *See id.* We thus conclude that this court has jurisdiction.[1]

---

[1] We note that there is tension among our precedents interpreting and applying § 1292(a)(1). Although this court takes a "practical view" as to what constitutes a modification of an injunction, we have also said that when an order is not expressly an injunction or a modification of an injunction but has the "practical effect" thereof, the order must have "serious, potentially irreparable consequences" in order for jurisdiction to lie. *See, e.g.*, *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 & n.14 (5th Cir. 1992) ("orders which explicitly grant or deny injunctive relief are immediately appealable as of right," but "orders which . . . have the *practical effect* of denying an injunction, but do not do so in explicit terms, are immediately appealable if the order threatens 'serious, perhaps irreparable consequences' and can be effectively challenged only by an immediate appeal"). *Deepwater Horizon*, however, suggests that an appellant must always show "serious, perhaps irreparable consequences" to confer jurisdiction under § 1292(a). 793 F.3d at 492. *But see Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 297 (5th Cir. 2015) (interpreting an order as an injunction even though it did not explicitly state it was for injunctive relief, but not

No. 16-30025

III

With respect to the merits, the Board argues that the district court abused its discretion by increasing Massey's salary from $4,000 per month to $8,000 per month. The Board also argues that the district court erred in referring to the CCO position as a "special master" under Federal Rule of Civil Procedure 53 and that even if it did not err in that regard, the district court based its decision on unreliable and irrelevant information.

We review the district court's determination of Massey's salary for an abuse of discretion. *See Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 267 (5th Cir. 2008) (citing *Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1 (1971)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010) (quoting *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)) (internal quotation marks omitted).

The fact that the district court referred to Massey as a special master is a distinction without a difference. Although the CCO position was created pursuant to the court's inherent authority in fashioning equitable remedies, *see Ex parte Peterson*, 253 U.S. 300, 312 (1920), the Board points to no authority to support its argument that the court's inherent power differs in any meaningful way from its authority pursuant to Rule 53 to appoint special masters, *see Ruiz v. Estelle*, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982) ("Beyond the provisions of [Rule 53] for appointing and making references to Masters, a Federal District Court has the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential."

discussing the consequences before determining that the court had jurisdiction). Because jurisdiction would be proper under any of these interpretations of § 1292(a)(1), we decline to resolve these tensions.

(quoting *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956)) (internal quotation marks and citations omitted)), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982). Therefore, the district court's characterization of Massey as a special master was not an abuse of discretion.

Nor did the district court abuse its discretion by relying on Rule 53 in calculating the increase in Massey's salary. Under Rule 53(g)(1), "the court may set a new basis and terms [for the master's compensation] after giving notice and opportunity to be heard." The fixing of fees and costs for a special master rests within the court's discretion. *Gary W. v. State of La.*, 601 F.2d 240, 245 (5th Cir. 1979). After giving both sides an opportunity to brief this issue, the district court issued its order raising Massey's salary.

The district court applied the "Hart formula," derived from *Hart v. Community School Board of Brooklyn, New York School District. No. 21*, 383 F. Supp. 699 (E.D.N.Y. 1974), in determining Massey's compensation. In *Hart*, the court concluded that "a reasonable fee would be based upon about half that obtainable by private attorneys in commercial matters." *Id.* at 767; *see also United States v. Yonkers Bd. of Educ.*, 108 F.R.D. 199, 202 (S.D.N.Y. 1985) (noting that courts have emphasized the public nature of such work in setting reasonable fees well below those charged in commercial legal matters). Applying this as a baseline, the court determined that $140 per hour was an appropriate hourly rate for the CCO position. The court then multiplied this number by the average number of hours that Massey worked per month as CCO.

The Board does not dispute that the hourly rate the court calculated was reasonable; rather the Board argues that the district court erred in accepting that Massey worked seventy hours per month on average in performing his duties as a CCO. First, the Board argues that the district court erred in relying on a summary that Massey provided in calculating his salary. The Board

argues that this summary only included the total number of hours worked and descriptions of the tasks performed, but was not itemized and did not include time entries. The Board offers no authority, nor have we found any, that supports its argument that Massey was required to extensively document his activities, or that he had to provide specific documentation in order to receive a salary increase. We therefore conclude the court did not abuse its discretion in relying on the information that Massey provided in calculating his salary.

Second, the Board argues that the district court improperly credited Massey with time spent working as a CCO when many of the tasks that Massey reported to have performed were outside the scope of his duties and responsibilities as a CCO. Such reported activities included organizing and moderating "community meetings" to discuss bullying and forming a blue ribbon panel to discuss issues concerning "at-risk kids" in the school district. The Board argues that these issues are beyond the scope of the district court's desegregation orders and therefore the district court should not have counted those activities when calculating Massey's compensation as CCO.

We cannot say that the district court's decision was an abuse of discretion. School integration is an enormously complex enterprise that requires consideration of an enormous number of factors. *Cf. Swann,* 402 U.S. at 27 n.10 ("There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case."). Efforts to achieve unitary status are bound to have a far reaching impact and unpredictable consequences across the school district. In this case, the district court has issued orders related to student discipline and special education programs. The Board's interpretation of the CCO's role in overseeing the district's integration efforts is far too narrow. The CCO's responsibilities—which include "offer[ing] suggestions to the school district as to possible methods or procedures which might be implemented to further

7

No. 16-30025

enhance desegregation aims"—are broadly defined and therefore it is reasonable to allow him some flexibility in how he carries out his duties. The district court has exercised its oversight over this case for many years and is well-versed with regard to the details and progress of the integration efforts and the role that the CCO plays. We therefore find that the district court did not abuse its discretion when it took Massey's reported activities into consideration when it calculated his new salary.

IV

For the foregoing reasons, the district court's decision is AFFIRMED.