Judge Regina Barthojomew-Woods
| tClass Counsel/Appellant, Joseph M. Bruno, brings this appeal of the trial court’s August 3, 2016 ruling in favor of Appellee, James M. Williams,- ordering payment to the Irpino Law Firm for the firm’s services in representing Mr. Williams. The payment, totaling $87,061.50, is purportedly for work performed in relation to what will be referred to as the “Billieson Litigation,” and was ordered to be drawn from an administrative expense account established specifically for the Billieson Litigation. For the reasons that follow, we reverse the ruling of the trial court and remand this matter for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Thé underlying case, originally filed in 1994, concerned children who suffered from exposure to lead paint in public housing buildings owned and operated by the Housing Authority of New Orleans (“HANO”). On October 27, 1997, a. hearing on class certification was conducted, and the trial court denied the plaintiffs’ request to certify the class. However, on March 3, 1999, this Court reversed the trial court’s decision, certified the class, and remanded *1093 the matter for further proceedings. Billieson, et al. v. City of New Orleans, 98-1232 (La.App. 4 Cir. 3/3/99), 729 So.2d 146. On February 9, 2000, several attorneys, including |¾ Joseph M. Bruno, were appointed as class counsel for the Billieson Litigation class action. The case continued for another ten (10) years until multiple settlements with the defendants were reached in 2010.
In two (2) separate judgments, both dated December 29, 2011, the trial court approved the settlements and ordered that forty percent (40%) of the total settlement amount be set aside for attorneys’ fees. However, class counsel could not agree upon the allocation of said fees. As a result of the disagreement among class counsel, on May 24, 2014, the trial court ordered that Scott Bickford and James Williams be appointed co-special masters pursuant to La.R.S. 13:4165, and charged them to, inter alia, “create or adopt any existing procedure for the fair, equitable and reasonable allocation and distribution of attorney fees.” The order provided that the special masters would be compensated at a rate of $350.00 per hour, and that “attorneys who assist” them would be compensated at a rate of $175.00 per hour. The special masters were ordered to “jointly submit to the Court, with copy to counsel, a monthly accounting of their billing and expenditures of cost.” Furthermore, the court ordered that “[a]ll bills must be submitted to all counsel before submission to the Court.”
On August 6, 2014, Motions to Disqualify and Remove Special Master Williams were filed by several class counsel. On August 7, 2014, Judge Chase recused herself from hearing the Motions to Disqualify Special Master Williams re-allotted the disqualification hearing to another division of the trial court. It was ultimately re-allotted to Judge Julien. A hearing ensued on October 24, 2014. On October 27, 2014, Judge Julien issued a judgment in which she, inter alia, denied the Motions to Disqualify and Remove Special Master Williams.
laOn December 8, 2014, Special Master Williams through the Irpino Law Firm, filed a motion to amend the trial court’s May 24, 2013 order, which appointed Bick-ford and Williams as co-special masters; in the motion he requested that the special masters be dismissed from the attorneys’ fee division determination portion of the underlying case. The trial court granted the motion to amend on December 15, 2014, and Special Masters Bickford and Williams were dismissed from the attorneys’ fees division determination portion of the underlying case. However, the Irpino Law Firm continued to provide legal services to Special Master Williams through March of 2015.
Over a year later, on or about June 23, 2016, Special Master Williams filed a Motion for Payment, wherein he moved for payment directly to the Irpino Law Firm in the amount of two hundred twenty-three thousand, eight hundred seventy-five dollars ($223,875.00) for services rendered. On July 5, 2016, Class Counsel/Appellant Joseph M. Bruno filed a memorandum in opposition to Special Master Williams’ motion for payment. On or about the same date, class counsel Gary J. Gamble and Jennifer N. Willis also filed oppositions to Special Master Williams’- motion for payment. A hearing on the motion for payment was held on July 13, 2016, and at the conclusion of the hearing, the trial court orally stated the following:
Well, one of the arguments that was raised specifically, I believe by Mr. Bruno’s office, is whether or not attorneys’ fees are not contemplated by the special master statute. And, as everyone in this room is aware, this case is not-has not been anything near normal since this Court has taken over this case. And *1094 while I understand that-I believe-and I am jumping back and forth between Mr. Gambel’s opposition and Miss Willis’ opposition and Mr. Bruno’s opposition and pulling bits and pieces from it, but as it relates to the fact that attorneys’ fees are not contemplated under [La. C.C.P. art. 151], and on recusal motions, I do not believe that Mr. Williams was taking a position. But the problem with it was, as I am sure Mr. Gambel Ulearned, you know, a lot of us did not realize how things were really moving with what you have to do—I did not know when I was supposed to call the Attorney General in the case and whether or not you could subpoena someone in a case, a judge in a case. So I think that there were a lot of things that were learned through the process in this case.
I am going to grant the motion for payment. However, I am going to list the attorneys’ fees for Mr. Irpino at the Attorney General rate at the time of the occurrence of the bills ... I Googled it, and the only thing I could find was some Attorney General rates for LSU and some other entities, and that came up to $175[.00] an hour.
On August 3, 2016, the trial court issued its written judgment as follows:
The Irpino Law Firm will be paid at a . rate of $175.00 per hour for its time spent representing Co-Special Master James Williams in connection with the Billieson litigation. The 497.50 hours spent by the Irpino Law Firm were justified and reasonable. However, the Court finds that $175.00 per hour is the amount which would have been charged if Co-Special Master James Williams had gone through the Attorney General’s office for representation. Although Mr. Irpino’s experience and reputation warrant his billed amount, the Court will only allow an hourly rate of $175.00 per hour. Accordingly:
It is hereby ordered that the CADA shall make payment to the Irpino Law Firm in the amount of $87,062.50 (eighty seven thousand sixty-two dollars and fifty cents) from the administrative expense account in the Billieson matter.
On August 5, 2016, Appellant, Joseph Bruno, on behalf of himself and in his capacity as class counsel, filed a motion and incorporated memorandum for new trial. The trial court denied the motion for new trial on August 9, 2016. Mr. Bruno filed a petition for order of suspensive appeal on August 12, 2016. On August 22, 2016, the trial court granted the petition for suspensive appeal and set a bond and/or security in the amount of one hundred thousand dollars ($100,000.00). Mr. Bruno then filed a request for written reasons on August 24, 2016. On the same date, Mr. Bruno notified the trial court of his intent to seek supervisory review of the trial court’s August 3, 2016 order to disburse the payment to the Irpino Law Firm and its August 22, 2016 order setting the suspensive .appeal bond in the 15amount of one hundred thousand dollars ($100,-000.00). On August 25, 2016, the trial court provided written reasons for the order and set a return date of September 26, 2016. Mr. Bruno filed a writ application with this Court on September 8, 2016, asserting that the trial court committed legal error when it set the suspensive appeal bond in the amount of one hundred thousand dollars ($100,000.00). This Court granted the writ and remanded to the trial court to set bond in accordance with La. C.C.P. art. 2124(B)(2). Bond was accordingly reset in the appropriate amount of $334,50. Now, the matter comes to this Court on Appeal of the trial court’s award of attorneys’ fees.[1]

*1095
ASSIGNMENT OF ERROR

Appellant generally argues the' trial court erred in granting thé' motion for payment. The assignment of error has several prongs, the first of which argues that the special master statute, La. R.S. 13:4165, does not contemplate an award of attorneys’ fees. Appellant highlights the statute’s silence in that regard, and references well-established jurisprudence holding that attorneys’ fees are only,appropriate when specifically authorized-by statute or contract. Appellant makes a similar argument with respect to La. C.C.P. art. 151, the article relied upon by class, counsel in moving to disqualify Special Master Williams.[2] Appellant equates the rights and responsibilities of a Special Master to that of a judge, based upon the Louisiana Supreme Court’s June 23, 2014 promulgation of subsection (E) to' its Code of Judicial Conduct applicable to compliance with the code, which states:
| r,During the tenure of his' or her appointment in accordance with statutory law, a special master is required to Comply with all of the provisions of Canons 1 through 5, except Canons 5C(3), 5D, and 5E.In addition, a special master will not be subject to the prohibitions in Canons 4B, 4C, 5B(2), and 6C(2). As to Canons 6 and 7, a special master is required to comply with Canon 6B(1) and is prohibited from soliciting or accepting political campaign contributions while serving as a special master. A special master who becomes a candidate for judicial office shall be subject to all of the provisions of Canon 7 that apply to judicial eandi-dates.[3]
In making this comparison,'Appellant argues that because a judge has “no personal right to continue handling a case,” a special master is similarly so limited, and need not employ the services of private counsel to maintain his or her status in any particular ease. Appellant further submits the debt owed to the Irpino Law Firm “is not real” as there is no evidence that Special Master Williams has made any payment, and that, in any event, the firm’s representation was not “successful” because Special' Master Williams voluntarily withdrew from his role in that' regard on the issue of attorneys’ fees. Lastly, Appellant critiques the trial court’s judgment for its lack of statutory or jurisprudential support, suggesting that the trial court judge simply relied on the “unique circumstances” of the Billieson Litigation as justification for her ruling. Appellant further suggests the ruling lends support to his contention, that. Special Master Williams could have availed himself of the services of the Attorney General’s Office, as the ultimate award was reduced to an amount based upon the Attorney General’s hourly rate.
Special Master Williams, in response, also notes the complex procedural history of-this case, suggesting that the trial court properly exercised its discretion in ordering that the Irpino Law Firm attorneys’ fees be paid from the 17administrative expense fund for the Billieson Litigation. He equates Louisiana’s special master statute to that of Rule 53(g)(1) of the Federal Rules of Civil Procedure, which provides that “[b]efore or after judgment, the' court must fix the master’s compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an op *1096 portunity to be heard.” Special Master Williams argues his service to the court as special master should not place him in a deficit, and that the ultimate determination of the issue is a matter of discretion vested with the trial court.

STANDARD OF REVIEW

Our analysis focuses on whether the relevant statute, La. R.S. 13:4165, permits a special master to recover attorneys’ fees related to rebutting a motion to disqualify. Such statutory interpretation is a question of law subject to de novo review. Orleans Par. Sch. Bd. v. State, Div. of Admin., Bd. of Supervisors, 14-0654 (La. App. 4 Cir. 1/7/15), 158 So.3d 846, 849. An erroneous application or interpretation of the law is not entitled to deference by a reviewing court. Id.

LAW AND ANALYSIS

Louisiana Revised Statute 13:4165 states in full:
A. Pursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant, the court may enter an order appointing a special master in any civil action wherein complicated legal or factual issues are presented or wherein exceptional circumstances of the case warrant such appointment. The consent of the parties litigant may be contingent upon any of the following:
(1) An estimate of the amount of the compensation of the special master.
(2) The identity of the special master.
|r(3) The court’s anticipated specifications of the powers of the special master as defined by Subsection B of this Section.
B. The order appointing a special master may specify or limit the master’s powers. Subject to such specifications or limitations, the master has and shall exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties.
C.(l) The court may order the master to prepare a report upon the matters submitted to him and, if in the course of his duties he is required to make findings of facts or conclusions of law, the order may further require that the master include in his report information with respect to such findings or conclusions.
(2) The report shall be filed with the clerk of court and notice of such filing shall be served upon all parties.
(3) Within ten days after being served with notice of the filing of the report, any party may file a written objection thereto. After a contradictory hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions. If no timely objection is filed, the court shall adopt the report as submitted, unless clearly erroneous.
D. The master’s compensation shall be reasonable, fixed by the court as limited by Subsection A of this Section, and taxed as costs of court.
E. Notwithstanding any other provision of law to the contrary, including Code of Evidence Article 706, the provisions of this Section shall provide the sole authority and procedure for the appointment, duties, powers, and compensation of a special master.
As an initial matter, this Court notes that the issue presented to this Court, to wit: whether or not the services and resulting fees of private counsel on behalf of a special master subject to a motion to disqualify constitutes “compensation” that may be “taxed as costs,” appears to be res nova in Louisiana. Outside of the jurisdic *1097 tion in Louisiana, there exists a limited amount of jurisprudence on the issue presented.
As Appellant correctly notes, the aforementioned statute is silent with regard to the award of attorneys’ fees incurred by a special master in defending his or her | position in the face of a motion to disqualify. This Court has held that in the absence of statutory or contractual authorization for attorneys’ fees, such fees are not allowed. Dixie Servs., L.L.C. v. R & B Falcon Drilling USA, Inc., 05-1212, p. 9 (La.App. 4 Cir. 3/21/07), 955 So.2d 214, 220-21. While we agree with Appellee that an award of attorneys’ fees is a matter of discretion vested with the trial court, such discretion may only be exercised after a determination is made that the fees are in fact authorized. See id. The trial court made no such , finding in this case, apparently instead relying on the fact that the Billieson Litigation “has not been anything near normal.”
To the extent one might suggest there exists a “contractual” authorization to pay attorneys’ fees, we are not convinced. The statute speaks to “compensation,” which is defined as “[rjemuneration and other benefits received in return for services rendered.” Black’s Law Dictionary (10th ed. 2014). Thus, we find that the statute contemplates compensation for the special master’s services rendered to the court—that is, for the labor and expenses necessarily incurred by the special master in fulfilling the obligations for which he or she was appointed. Such does not include the costs associated with hiring private counsel to rebut a motion to disqualify. We apply the same reasoning to that portion of the order appointing Special Master Williams allowing for compensation to attorneys who “assist” him. There is no support for the contention that this clause was intended to cover private attorneys’ fees related to a motion to disqualify. Indeed, we read this clause to similarly cover only compensation for work performed in assisting the special master in discharging his duties as ordered by the court.
As noted, there is scant jurisprudential guidance on this issue. Indeed, our research indicates that no Louisiana appellate court has addressed this specific h nissue.[4] However, the Supreme Court of Oklahoma addressed a similar issue in Hough v. Hough, 2004 OK 45, ¶¶ 13-14, 92 P.3d 695, 702-03, and reached a similar' result:
The general rule is “[ajppeal-related attorney fees are recoverable if statutory authority exists for their award in the trial court.” Casey v. Casey, 2002 OK 70, ¶ 26, 58 P.3d 763, 772 (footnotes omitted). This case presents a unique question concerning a non-party’s quest for appeal-related attorney’s fees. We are unaware of express statutory authority for the recovery of a special master’s attorney fees. However, statutory authority exists for the award of “compensation [to referees] for their services as the court may deem just and proper, which shall be taxed as part of the costs in the case.” 12 O.S. § 619 (emphasis added). Further, § 619 has been interpreted to apply to compensation of special masters. Oklahoma Oil & Gas Exploration Drilling Program v. W.M.A. *1098 Corp., 1994 OK CIV APP 11, 877 P.2d 605, 612.
In this case, the trial court ordered Husband to pay the fees and costs of special master and the COCA affirmed this-award pursuant to 12 O.S. § 619. While we agree "with the lower courts’ determination that special master was entitled to recover fees and costs as compensation for his services in accordance with § 619, we • disagree with the COCA’s characterization of § 619 as statutory authority for an attorney fees award. Since § 619 does not authorize an attorney fees award in the trial court, it follows that 12 O.S. § 619 is likewise an improper basis for special master’s recovery of appeal-related attorney fees.
Similarly, here, there is no statutory basis for Special Master Williams to recover attorneys’ fees associated with rebutting a motion to disqualify. Nor is there any support to consider such expenses as “compensation” for services rendered. Instead, Special Master Williams incurred those expenses in the interest of maintaining his status as special master in the Billieson Litigation. The court’s In order appointing Special Master Williams is silent as to this specific issue, and we decline to read specific compensation into the general language of the order.
We have also considered Appellee’s suggestion that this court should take guidance from Rule 53(g) of the Federal Rules of Civil Procedure (emphasis added):
(g) Compensation.
(1) Fixing Compensation. Before or after judgment, the court must fix the master’s compensation on the basis and terms stated in the appointing order, but the court may set a new. basis and terms after giving notice and an opportunity to be heard.
(2) Payment. The compensation must be paid either:
(A) by a party or parties; or
(B) from a fund or subject matter of the action within the court’s control. • '
(3)Allocating Payment. The court . must allocate payment among the parties after considering the nature and amount of the controversy, the parties’ means, and the extent to which any party is more responsible than other parties for the reference to a master. An interim allocation may be amended to reflect a decision on the merits.
First, we note that the Louisiana special master statute requires the consent of the parties, which in part may be “contingent” upon an estímate of the special master’s compensation. However, even putting that issue aside, to take guidance from-Rule 53 would in fact bolster-the position of Appellant, as it permits- compensation on- a new basis or -new terms, but only “after giving notice and an opportunity to be heard.” We read this Rule to be prospective in nature. That is, the realm of'compensable activities may be enlarged going forward, but they cannot be enlarged retroactively. Rule 53 does not support Appellee’s argument because there is no evidence that notice or an opportunity to be heard was provided prior to the. court’s ruling that granted. payment for attorneys’ fees already incurred in the instant matter. Instead, the parties simply proceeded to a hearing on a motion .for payment well over a year after the expenses had been incurred and. a bill submitted | iato Special Master Williams. Not only is there a lack of evidence that Special Master .Williams complied with the appointment order requiring co-special masters “jointly submit .... a monthly accounting of their billing and expenditures of cost[J” but he apparently failed to initially put the relevant parties on'notice of his retention of private counsel. The U.S. Court of Appeal for the Sixth Circuit, in Reed v. Cleveland Bd. of Ed., 607 F.2d 737, 748 (6th Cir. 1979), suggested a “better practice”:
*1099 Courts must never-lose sight of the fact that the fees in a case of this kind are paid from public funds. Every effort should be made to keep these expenses as low as is reasonably possible. Where appointment of masters and outside consultants is deemed necessary, the better practice is that followed by the district court in Amos v. Bd. of School Directors of the City of Milwaukee, 408 F.Supp. 765 (E.D.Wis.1976), Aff'd sub nom., Armstrong v. Brennan, 539 F.2d 625 (7th Cir. 1976), Remanded on other grounds, 433 U.S. 672, 97 S.Ct. 2907, 53 L.Ed.2d 1044 (1977). There Judge Reynolds set the fee of the special master ($50 per hour) at the time of his appointment and directed him to submit monthly vouchers. 408 F.Supp. at 824. When this procedure is followed 'the parties know the rate of compensation in advance and are aware of the actual costs of the reference as they accrue.
The original order appointing Special Master Williams did not discuss potential attorneys’ fees. It simply set the rate of his compensation and the nature of his obligations and duties as special master, and required monthly accounting. Thus, the order put the parties on notice regarding “the actual costs” of his services prior to their accrual, such that their consent was informed. To the extent Appellee would argue that the parties were on notice as of the first appearance of the Irpino Law Firm in court, there is no evidence that Special Master Williams thereafter put the parties on notice that he intended to seek payment of his attorneys’ fees from the parties once the Irpino Law Firm’s representation had concluded.
1 isWe are also persuaded by Appellant’s analogy between special masters and judges. The role of a special master -is quasi-judicial, and as noted, special masters are indeed subject to several of the canons of the Louisiana Code of Judicial Conduct. Much like a judge subject to a motion to recuse, a special master does not possess a “right” to remain on any particular case. A judge does not appear on her own behalf or with private counsel at a recusal hearing, because an impartial judge possesses no interest in overseeing a case. Indeed, if an interest exists, recusal may be warranted. La. C.C.P. art. 151. While allegations of improper conduct giving rise to a motion to recuse or disqualify may merit a response from a judge or special master for the record, it does not necessarily follow that private counsel may be retained and the expenses of protracted litigation on the issue passed on to the litigants.
We must clarify that analogizing a special master to a judge is not to be read as equating the two. Thus, we are not convinced by Appellant’s argument suggesting that Special Master Williams could have availed himself of the services of the Attorney General’s office, who is obligated to provide representation to parish court judges in matters of recusal. Louisiana Revised Statute 13:2564.3(A) provides, in relevant part:
It is hereby declared to be the public policy of this state that the state, through the attorney general, shall provide legal representation to a (parish court judge of this state in all claims, demands, or suits, if such claim, demand, or suit arises out of the discharge of his duties and is within the scope, of his office and such claim, demand, or suit did. not result from the intentional wrongful act or gross negligence of the parish court judge.
Relying, again, on the plain language of the statute, it appears special masters are not entitled to representation by the Attorney General’s office, despite a special | ^master’s obligations to adhere to certain canons under the Louisiana Code of Judicial Conduct.
*1100 At the federal level, there existed disagreement regarding whether the statute applicable to disqualification of judges, 28 U.S.C. § 455, applied to special masters, as it facially only applied to justices, judges, and/or magistrate judges. Guardian Pipeline, L.L.C. v. 950.80 Acres of Land, 525 F.3d 554, 556 (7th Cir. 2008). The Guardian decision noted that the debate was settled by the 2003 amendment of subsection (a)(2) to Rule 53 of the Federal Rules of Civil Procedure. Id. That subsection now provides:
(2) Disqualification. A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court’s approval, consent to the appointment after the master discloses any potential grounds for disqualification.
Since there is no comparable statute or rule setting forth the specific bases for disqualification of a special master in Louisiana, we look to the federal jurisprudence and its persuasive authority on this issue. The U.S. Court of Appeal for the Fifth Circuit has held:
Rule 53 requires that a special master “must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court’s approval, consent to the appointment after the master disclosed any potential grounds for disqualification.” Fed. R. Civ. P. 53(a)(2). “A motion to disqualify brought under 28 U.S.C. § 455 is ‘committed to the sound discretion of the district judge’ ” and is reviewed for abuse of discretion. Sensley[ v. Albritton ], 385 F.3d [591] at 598 [ (5th Cir. 2004) ] (citation omitted).
In re: Deepwater Horizon, 824 F.3d 571, 579-80 (5th Cir. 2016). Despite the lack of specific guidance in Louisiana regarding when disqualification of a special master is warranted or required, we agree that such a decision is a matter of discretion vested with the trial court. Thus, there can be no doubt that the ultimate Injudicial function rests with the trial court judge, and a special master cannot be fully equated with a judge. Therefore, La. R.S. 13:2564.3, a statute declaring a specific public policy as to parish court judges, does not necessarily permit a special master to avail him or herself of the benefits of representation by the Attorney General. Accordingly, we find that even to the extent the trial court sought to reduce the Irpino Law Firm’s rate to $175.00 per hour, the judgment was in error insofar as it relied upon the Attorney General’s fees rate.
Lastly, we note that this Court has not conducted a line-by-line analysis of the final summary bill documenting the services charged by the Irpino Law Firm to Special Master Williams. As noted, some charges post-date Special Master Williams’ dismissal from the attorney’s fee division determination portion of the order appointing him. While our ruling today would exclude payment for services rendered in rebutting the motion to disqualify, we do not intend to suggest our ruling excludes payment for assisting Special Master Williams with discharging his duties as ordered by the court, at a rate of $175.00 per hour, as contemplated by the order appointing Special Master Williams. However, the trial court will first have to make the determination that such funds exist in the administrative expense account.

CONCLUSION

In light of the foregoing, we find that the trial court erroneously interpreted La. R.S. 13:4165 and abused its discretion in granting Special Master Williams’ motion. The judgment of the trial court granting Special Master Williams’ motion for payment is reversed, and the matter remand *1101 ed for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED
LOBRANO, J., CONCURS IN THE RESULT

. Special Master Williams has not appealed that portion of the trial court's ruling denying the full amount of the Irpino Law Firm’s originally billed attorneys' fees.

. Class counsel/Appellant Joseph Bruno was not among the class counsel fhat moved for Special Master Williams’ disqualification.

. It should be noted that this particular subsection became effective on June 23, 2014-after Special Master Williams' appointment, but before his retention of the Irpino firm for . purposes of defending the motion to disqualify.

. Appellee cites Carter v. Honorable Judges, Divisions A-E, G, & I of 14th Judicial Dist., 07-823 (La.App. 3 Cir. 12/19/07), 972 So.2d 457, suggesting we should analogize the administrative expense fund in the instant matter with the Judicial Expense Fund discussed in Carter. Appellee states the Carter court held that "payment of a judge’s legal expenses from the judicial expense fund was permitted.” However, the Third Circuit simply held that the judge seeking payment of attorneys’ fees inappropriately sought relief via writ of mandamus. Id. at 460.