# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2018

Lyle W. Cayce
Clerk

No. 18-30114

M. C. MOORE, as father and next friend to minors Joyce Marie Moore, Jerry
Moore, and Thelma Louise Moore; ET AL,

Plaintiffs

v.

TANGIPAHOA PARISH SCHOOL BOARD, a corporation,

Defendant - Appellant

v.

DONALD C. MASSEY, Court Appointed Compliance Officer, Tangipahoa
Parish School Board,

Interested Party - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This appeal from a long-running school desegregation case concerns an
issue ancillary to its merits: the reimbursement of expenses for a court-
appointed oversight official. The district court ordered an increase in the
official's compensation, which the school board appealed. The official
represented his interests on appeal successfully. *See Moore v. Tangipahoa*

No. 18-30114

*Parish Sch. Bd.*, 843 F.3d 198 (5th Cir. 2016). Afterwards, he sought reimbursement of his appellate expenses, which the district court granted. Finding this a proper exercise of the district court's discretion to fix its agents' fees and costs, we AFFIRM.

I

This desegregation suit against Tangipahoa Parish School Board ("the Board") began in 1965, and the district court issued a permanent injunction in 1967. Events relevant to this appeal began in 2008, when the district court revised the duties, responsibilities, and compensation of the Court Compliance Officer ("CCO"). The court's order described the CCO as a part-time position with a fixed salary of $36,000 per year, paid by the Board. It explained that the CCO's role is "to ensure compliance with the orders of the court" and to ensure "that the letter and spirit of the case law and orders of the court are followed regarding school board responsibility to desegregate." It also explained that its enumeration of duties and responsibilities was "intended to be a guideline and [to] not limit the rights of the compliance officer to ensure that the orders of the court are enforced."

In August 2014, the district court appointed Donald Massey to the CCO position. The court's order appointing Massey explained that the CCO's duties "shall remain as outlined in the previous Orders" of the court and that he "may assume such additional duties and responsibilities . . . assigned to him by the Court." It authorized Massey "to engage appropriate support personnel to assist in the carrying out of his duties and responsibilities" as CCO. The court also increased the CCO's compensation from $36,000 to $48,000 per year.

In July 2015, Massey filed a motion in the district court seeking to convert his compensation from an annual or monthly rate to an hourly rate, citing the increasing time commitment of the CCO role. Over the Plaintiffs' and the Board's opposition, the district court increased Massey's compensation

No. 18-30114

from \$4,000 to \$8,000 per month, noting Massey's deep involvement in desegregation efforts and the court's desire to bring this long litigation to a conclusion.

We affirmed that compensation increase against a reasonableness challenge from the Board. *See Moore*, 843 F.3d at 203. Massey, through counsel, appeared as appellee to defend the district court's order. *Id.* at 199. As a threshold matter, we rejected Massey's argument that we lacked jurisdiction, finding that the district court's compensation increase was a modification of the permanent injunction and thus reviewable under 28 U.S.C. § 1292(a)(1) as an interlocutory order. *Id.* at 200. As another preliminary matter, the Board challenged the district court's reliance on Rule 53 of the Federal Rules of Civil Procedure, governing the use of special masters, when granting Massey the compensation increase. We explained that Massey's position owed its creation to "the court's inherent authority in fashioning equitable remedies," but it was "a distinction without a difference" for the district court to characterize him as a special master under Rule 53. *Id.* at 201. We then ruled that the district court did not abuse its discretion by increasing Massey's compensation. *Id.* at 203.

We issued our decision in December 2016. Massey then filed a "Motion for Attorney's Fees for Representation of Court Compliance Officer on Appeal" in August 2017. Again over the Board's objection, the district court granted Massey's motion. It categorized the payment requested by Massey as "reimbursement" for "expenses" incurred in furtherance of court-appointed duties, rather than as an award of attorney's fees subject to Rule 54 of the Federal Rules of Civil Procedure.[1] The court noted that a prior order

---

[1] If it were a conventional award of attorney's fees, the court said that Massey's request would be untimely, because Rule 54(d) requires that fees be requested within fourteen days of the relevant judgment. Massey waited roughly nine months to file his motion.

No. 18-30114

authorized the CCO to engage "appropriate support personnel" to that end. Because "the CCO has a broad dictate to enforce the Court's orders," the district court reasoned that it was appropriate for Massey to defend the compensation order on appeal, to use counsel for the purpose, and then to obtain reimbursement.

The district court did not grant Massey all the payment he sought. Conducting a lodestar calculation, it agreed with the Board that certain clerical work should not be compensated and that Massey should not get reimbursement for attorney time spent on his unsuccessful jurisdictional argument. Massey had asked for $21,982 in legal fees and $74.28 in costs. Applying a "blended rate" of $180 per hour, reflecting a weighted average of the hourly rates for Massey's attorneys, the court ordered the Board to pay Massey the requested costs and $17,388 in legal fees. The Board now appeals that order.

II

A district court may appoint special masters and other agents "pursuant to the court's inherent authority in fashioning equitable remedies." *Moore*, 843 F.3d at 201 (citing *Ex parte Peterson*, 253 U.S. 300, 312 (1920)). The fixing of fees and costs for court-appointed agents rests within the district court's discretion. *Id.* at 202 (citing *Gary W. v. Louisiana*, 601 F.2d 240, 245 (5th Cir. 1979)). We therefore review such decisions for abuse of discretion. *Id.* at 201 (citing *Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 267 (5th Cir. 2008)).

III

It is settled that special masters and other agents of the court can raise issues of compensation in the district court and defend their interests on appeal. *See Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 996 (9th Cir. 2003). In 1876, the Supreme Court ruled that a receiver, appointed to handle

4

a foreclosure, had the ability to appeal the district court's orders concerning the settlement of his accounts. *Hinckley v. Gilman, Clinton, & Springfield R.R. Co.*, 94 U.S. 467, 468–69 (1876). "For this purpose he occupies the position of a party to the suit, although an officer of the court, and after the final decree below has the right to his appeal here." *Id.* at 469. Special masters, receivers, and other court agents have "a financial interest in [their] compensation that easily satisfies Article III's requirements of injury, causation, and redressability." *Cordoza*, 320 F.3d at 995 n.2.

The Board objects that cases like *Hinckley* and *Cordoza* concern the compensation of special masters after their work has finished and that a conflict of interest arises in compensation disputes when work is ongoing. We note that the Sixth Circuit dealt with the compensation of a special master in Cleveland's school desegregation case even as the master remained in the position. *See Reed v. Rhodes*, 691 F.2d 266 (6th Cir. 1982) ("*Reed II*"); *Reed v. Cleveland Bd. of Ed.*, 607 F.2d 737 (6th Cir. 1979) ("*Reed I*"). Notably, *Reed II* included an award of appellate expenses incurred by the special master in *Reed I.* 691 F.2d at 269–70 ("The special master was entitled to defend the district court's award."). We follow the Sixth Circuit's example here.

The Board is correct that special masters are obligated to be impartial and objective in the pursuit of their duties. *See Newton v. Consol. Gas Co. of N.Y.*, 259 U.S. 101, 105 (1922) ("He occupies a position of honor, responsibility, and trust; the court looks to him to execute its decrees thoroughly, accurately, impartially, and in full response to the confidence extended . . . ."); *see also* Fed. R. Civ. P. 53(a)(2) ("A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455 . . . ."). The interest in impartiality is properly furthered through the district court's exercise of discretion when ruling on a request for increased compensation, followed by this court's review of that exercise. If a

special master exhibits partiality at other times, the same forms of review apply. *See People Who Care v. Rockford Bd. of Ed., Sch. Dist. No. 205*, 111 F.3d 528, 541 (7th Cir. 1997) ("Should any appealable order be issued after a hearing in which the special master participated in an irregular manner, the appellant if he was prejudiced by the irregularity can ask us to reverse on that basis."). The concern for impartiality is not so dire that we must make the special master wait until the end of the litigation or of his service to raise compensation issues.

The Board also argues that the district court abused its discretion when construing its own orders establishing and shaping the CCO position. As noted, the district court had explained that the CCO could engage "appropriate support personnel" to support the CCO's performance of his duties and that its orders were not meant to "limit the rights of the compliance officer to ensure that the orders of the court are enforced." The district court reasoned that the CCO was established to ensure compliance with the court's orders; its decision to increase Massey's compensation was such an order; defense of it therefore was his duty; and appellate counsel was appropriate support personnel for that task.

This was an appropriate exercise of the district court's discretion. If the Board had refused to pay Massey entirely, no one would doubt that pursuit of payment would be a legitimate and compensable use of his time. We see the issue of appellate expenses similarly. When the Board appealed the district court's order increasing Massey's compensation, no one other than Massey had a direct interest in defending the order. Indeed, the Plaintiffs had opposed the increase. *See* David I. Levine, *Calculating Fees of Special Masters*, 37 Hastings L. J. 141, 194 (1985) ("A nonappealing party who does not have to pay the fee award has no direct incentive to expend resources to defend the master's award, and the judge is obviously in no position to defend the award

personally. By default, then, that task falls to the master."). Were Massey not to defend the court's order on appeal, it would also leave us without the adversarial argument on which the judicial process depends. *Cf. In re Deepwater Horizon*, 845 F.3d 634, 636 (5th Cir. 2017) (acknowledging appearance of special master as appellee); *In re Deepwater Horizon*, 643 F. App'x 377, 380 n.3 (5th Cir. 2016) (same).

The Board's favored case law does not persuade us otherwise. The Board cites two decisions by state courts rejecting special masters' legal expenses. *See Billieson v. City of New Orleans*, 224 So. 3d 1091 (La. Ct. App. 2017); *Hough v. Hough*, 92 P.3d 695 (Okla. 2004). *Billieson* is inapposite because it was construing a state statute governing the compensation of special masters. *Hough* is also inapt. As a factually complex dispute at the intersection of family and bankruptcy law decided with reference to Oklahoma statutes, *Hough* does not closely resemble the present case. Instead, we adhere to the approach of taken by the Sixth Circuit in *Reed II* on facts analogous to those before us. We value uniformity among federal courts, and adopting the Sixth Circuit approach ensures that district court orders are properly defended on appeal.

The Board also points to *Reed I*, in which the Sixth Circuit rejected certain compensation for a constitutional law professor appointed to aid the Cleveland schools' special master. 607 F.2d at 745. Some of the law professor's time was spent advising the court itself on legal issues. *Id.* at 747–48. The Sixth Circuit ruled that it was an impermissible abdication of the judicial role for the district court to rely on the law professor and that the Cleveland school board could not be required to pay for it. *Id.* The Board argues that Massey's private counsel should be viewed the same way as the law professor in *Reed I*. The Sixth Circuit did reduce the law professor's compensation, but only by one-third. *Id.* at 748. It viewed the other two-thirds, the time spent counseling the special master, as legitimate. *Id.* If anything, the example favors Massey.

No. 18-30114

We affirm not only the district court's reimbursement of Massey's appellate expenses, but also the timing and quantity of the reimbursement. The Board urges us to apply the fourteen-day deadline for seeking attorney's fees under Rule 54, but Massey sought reimbursement pursuant to his court-appointed duties, not fees as a prevailing party.[2] For the same reason, the Board's objection that Massey did not timely file a bill of costs fails. The Board also challenges the hourly rates claimed by two of the attorneys representing Massey. The Supreme Court has said that payment to special masters "should be liberal, but not exorbitant. The rights of those who ultimately pay must be carefully protected." *Newton*, 259 U.S. at 105. Those rights were adequately protected here. As the district court observed, these two attorneys' rates were well below the prevailing rate for commercial litigators in the area. We therefore find no abuse of discretion.

IV

For the foregoing reasons, the order of the district court is AFFIRMED.

---

[2] For that reason, we need not decide whether Rule 54's deadline even applies to parties who prevail on appeal.