# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 1, 2019

Lyle W. Cayce
Clerk

No. 18-30131

M. C. MOORE, as father and next friend to minors Joyce Marie Moore, Jerry Moore, and Thelma Louise Moore; HENRY SMITH, as father and next friend to minors Bennie Smith, Charles Edward Smith, Shirley Ann Smith, and Earline Smith,

> Plaintiffs - Appellants

v.

TANGIPAHOA PARISH SCHOOL BOARD, a corporation,

> Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:65-CV-15556

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

This appeal stems from a long-running desegregation case. In 1967, the district court issued an injunction prohibiting racial discrimination in the form of segregation in public schools in Tangipahoa Parish, and has exercised continuing supervision over the implementation of the Tangipahoa Parish

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30131

School Board's ("TPSB") desegregation obligations.[1] As part of the court's initial injunctive ruling, the court ordered that the TPSB "make affirmative attempts to desegregate its public schools and make all good faith efforts to eradicate the vestiges of *de jure* segregation." *Moore v. Tangipahoa Parish Sch. Bd.*, No. 65-15556, 2008 WL 1930501, at *1 (E.D. La. Apr. 30, 2008). The Tangipahoa Parish School System has not yet achieved unitary status.

In January 2010, the district court issued an order modifying the desegregation plan with regard to the hiring procedures for all principal, supervisor, and administrator positions in the Tangipahoa Parish School System ("Order 866"). Upon considering criteria proposed by Plaintiffs and the TPSB, the court implemented Order 866, which provided certain hiring requirements in accordance with the parties' diversity goal.

The court ordered the hiring of qualified black applicants until the 40-60 ratio is achieved. Order 866 specifically states that "the school system *shall* hire or appoint a qualified Black [applicant] . . . to achieve a diversity goal of 40 percent Black and 60 percent white in each category [of administrators]." Order 866 requires all applicants to be screened by the Tangipahoa Parish School System Personnel Department to ensure they meet educational and certification requirements. Applicants deemed qualified are evaluated by an interview committee. The superintendent then recommends an applicant. Until the diversity goal is met, the procedure requires that if any of the qualified applicants are black, the black applicant should be recommended for the position.

A court-appointed Court Compliance Officer ("CCO") is responsible for ensuring compliance with the court's desegregation orders, including Order 866. The CCO receives a list of the name and race of each qualified applicant.

---

[1] *See generally Moore v. Tangipahoa Parish Sch. Bd.*, 304 F. Supp. 244 (E.D. La. 1969).

No. 18-30131

If the superintendent chooses not to recommend a black applicant because the committee believes there is a more qualified applicant of a different race, then the superintendent must submit written reasons to the CCO and the Chief Desegregation Implementation Officer ("CDIO"). The CCO must notify the superintendent if there are any objections from black applicants or the original plaintiffs regarding the position or if further investigation is needed regarding the hire for the position.

In 2016, Kim Notariano, a white woman, applied to be the Tangipahoa Parish School System's Director of Transportation—a position that is subject to Order 866's hiring procedures. Notariano was not selected for the position (for the second time); rather, the interviewing committee and the superintendent recommended a black male applicant for the Director of Transportation position. On December 3, 2017, Notariano emailed a grievance to the CCO, requesting an emergency investigation.[2] Notariano alleged that (1) the black male applicant was unqualified and that she was a more qualified applicant; and (2) that she was not selected for the position because the Board retaliated against her due to her prior complaints and/or discriminated against her on the basis of gender.[3] The focus of Notariano's grievance is TPSB's alleged noncompliance with Order 866.

On December 5, 2017, the CCO issued a recommendation regarding Notariano's complaint. The CCO concluded that the TPSB acted in compliance with the hiring order. He noted that an interview committee, which included the CDIO, interviewed Notariano and other qualified applicants and

---

[2] According to the CCO, this was Notariano's third complaint.

[3] Notariano makes intermittent and unrelated complaints regarding the district's interim hiring practices. Class Counsel raised concerns about interim hiring and vacant staff positions, which was investigated by the CCO and discussed in the CCO's March 26, 2018 interim report. In response, the district court ordered the development of a framework to govern the Board's future use of interim appointments.

unanimously recommended a qualified black applicant to the superintendent. The superintendent recommended the same qualified black applicant to the TPSB Personnel Committee. Further, citing *Moore v. Tangipahoa Parish Sch. Bd.*, 625 F.2d 33 (5th Cir. 1980) ("*Moore II*"), the CCO concluded that Notariano did not have standing to file a complaint of "lack of compliance by TPSB regarding any individual employment action involving her." However, the CCO recognized that "to the extent that [Notariano's] complaint is interpreted to raise systemic issues involving compliance with the hiring procedures" set forth in Order 866, he and the CDIO "remain engaged in an investigation of these and other issues."

On December 29, 2017, the original plaintiffs, representatives of the class of black students attending public schools in Tangipahoa Parish, filed an objection to the CCO's recommendation in district court, reasserting Notariano's allegations that the black applicant was not qualified, criticizing the applicant selection process, and claiming that the CCO misinterpreted the *Moore II* case. On January 2, 2018, plaintiffs filed a Motion for Evidentiary Hearing and Further Relief relative to the objection, including a request for an injunction to require the Board to hire Notariano.

On January 9, 2018, the district court issued an order overruling plaintiffs' objection and affirming the CCO's recommendation. Applying de novo review, the district court agreed with the CCO's conclusion that Notariano lacked standing because her allegations were based on retaliation of past complaints and gender discrimination—allegations that "do not involve the constitutional issues addressed by the Court's [desegregation] staff hiring orders." The district court dismissed plaintiffs' motion for an evidentiary hearing as moot. Plaintiffs timely appealed.

## STANDARD OF REVIEW

"In desegregation cases, the objective is 'to eliminate from the public schools all vestiges of state-imposed segregation.'" *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 238 (5th Cir. 2014) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). A district court has the equitable power to fashion desegregation remedies consistent with the nature of the constitutional violation. *See Samnorwood Ind. Sch. Dist. v. Tex. Educ. Agency*, 533 F.3d 258, 267 (5th Cir. 2008). "We review the district court's implementation of desegregation remedies for abuse of discretion." *Cowan*, 748 F.3d at 238 (citing *Valley v. Rapides Parish Sch. Bd.*, 702 F.2d 1221, 1225 (5th Cir. 1983)). While conclusions of law are reviewed de novo, findings of fact are reviewed for clear error. *Id.* "[G]iven the unique factual circumstances present in school desegregation cases, the district court's factual findings are entitled to great deference[,]. . . particularly [] when, as here, the district judge has supervised the case for many years." *Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 296 (5th Cir. 2008) (internal quotation marks and citation omitted).

We review questions of standing de novo. *Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010). Because standing is a threshold jurisdictional requirement, the party seeking to invoke federal jurisdiction has the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). The question of standing "is whether the litigant is entitled to have the court decide the merits of the dispute," which "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The "irreducible constitutional minimum" of standing consists of three elements: (1) "the plaintiff must have suffered an injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is likely to be redressed

No. 18-30131

by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61. In addition to the constitutional requisites, prudential requirements may restrict standing. The alleged injury must be within the "zone of interests" protected by the constitutional guarantee invoked. *Barlow v. Collins*, 397 U.S. 159, 164 (1970).

## DISCUSSION

The district court properly applied de novo review to the CCO's conclusion of law that Notariano lacked standing to bring a complaint under Order 866. Fed. R. Civ. P. 53(f)(4). Similarly relying on *Moore II*, 625 F.2d 33, the district court affirmed the CCO's conclusion that Notariano lacked standing based on its reasoning that Notariano's "complaint alleges that the school board is retaliating against her for past complaints and discriminating on the basis of gender." The district court held that "[s]uch allegations do not create standing [in this desegregation case] because they do not involve the constitutional interests addressed by the Court's staff hiring orders."

In *Moore II*, a prior decision in this case, we held that Elizabeth Moulds, a white female teacher in the Tangipahoa Parish School System, lacked standing to bring a Fed. R. Civ. P. 71 motion to enforce a court-ordered hiring procedure. 625 F.2d at 34–35. Like Moulds' claim, the interest Notariano and Plaintiffs seek to vindicate is not within the zone of interests protected by desegregation Order 866—explicitly implemented to remedy segregation and to achieve the parties' racial diversity goal. Because Notariano is a non-party who did not assert claims of racial discrimination as protected by Order 866, she lacks standing to enforce compliance with the district court's remedial order. *Moore II*, 625 F.2d at 35; *see also Reynolds v. Butts*, 312 F.3d 1247, 1250 (11th Cir. 2002).

Appellants' allegations that Notariano was denied employment opportunities in retaliation for her membership with the NAACP and her public opposition of racial discrimination are unsubstantiated and do not

appear in Notariano's original grievance.[4] The focus of Notariano's grievance is allegations of discrimination based on her gender and alleged retaliation for previously filing complaints when she was not promoted. As this court recognized in *Moore II*, 625 F.2d at 35 n.1, and as explicitly stated in Order 866, the procedure set forth in Order 866 "in no way diminishes" or affects an individual applicant's right to seek redress in separate litigation for any violations of her civil rights which may have occurred when she was denied promotion—a remedy Notariano is currently pursuing in district court in Civil Action No. 16-17832. *See Notariano v. Tangipahoa Parish Sch. Bd.*, 266 F. Supp. 3d 919 (E.D. La. 2017).

Procedurally distinguishable from *Moore II*, however, the original plaintiffs in the suit—rather than Notariano—filed the objection to the CCO's recommendation in district court as well as the instant appeal. However, the underlying relief plaintiffs seek to address is based on Notariano's claims, and is intended to benefit Notariano, a non-party. This does not cure the jurisdictional deficiency that Notariano's interests are not within the zone of interests of the challenged order.

Moreover, assuming *arguendo* that Notariano's grievance was properly brought in this suit, there is no evidentiary support for Notariano's claim that the TPSB's selection of the Director of Transportation was not in compliance with Order 866. Further, neither Notariano or Plaintiffs have specifically articulated the qualifications they assert that the black applicant lacked. At best, Notariano's grievance alleges that the black applicant had an engineering degree when the position required a business degree. However, in the same

---

[4] *See e.g., Finley v. Johnson*, 243 F.3d 215, 219 n. 3 (5th Cir. 2001) ("We have held that issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge.") (citing *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992)).

email, she bewilderingly refers to the applicant as a "business major." Again, without providing specific allegations, Notariano repeatedly refers to the black applicant as "unqualified" and states that the applicant does not possess the qualifications in the job description.

To the contrary, the CCO found that the procedure required by Order 866 was followed. The CCO concluded, "from the materials presented, it appears that TPSB has, thus far, acted in compliance with the applicable Order(s) central to Staff Hiring, *to wit*, the interview committee recommended to the Superintendent a qualified black applicant for the position of Director of Transportation; Superintendent Kolwe, in turn, recommended that applicant to TPSB." Plaintiffs' assertion that the TPSB Personnel Committee tabled consideration of the black applicant, questioning his qualifications, further evidences TPSB's good faith compliance with the court's Order 866.

Order 866 supports the TPSB's position, so long as the evidence shows racial diversity goals are not met. Plaintiffs do not allege that the 40-60 diversity goal had been met at the time Notariano applied to be the Director of Transportation.

We also reject Plaintiffs' challenge to the district court's denial of an evidentiary hearing. Federal Rule of Civil Procedure 53 governs the district court's review of the CCO's recommendation. *See Moore v. Tangipahoa Parish Sch. Bd.*, 843 F.3d 198, 202 (5th Cir. 2016). A court is not required to hold an evidentiary hearing prior to accepting the CCO's recommendation, rather the court is only required to give the parties "an opportunity to be heard." *See* Fed. R. Civ. P. 53(f)(1). Prior to making its ruling, the district court considered the Plaintiffs' objection to the CCO's recommendation as well as Plaintiffs' motion for evidentiary hearing and further relief. Thus, it was not an abuse of discretion for the district court to deny an evidentiary hearing.

No. 18-30131

AFFIRMED.[5]

---

[5] Appellee filed a motion to strike portions of Appellants' reply brief. We deny that request as unnecessary in light of this opinion affirming the district court.